SUFFOLK SAVINGS BANK *vs.* CITY OF BOSTON.

Suffolk.    March 14, 1889. — June 18, 1889.

Present : MORTON, C. J., FIELD, DEVENS, W. ALLEN, & HOLMES, JJ.

*Coupon Bond — Calling for Redemption — Collateral Agreement — Notice — Estoppel.*

Municipal bonds, each providing for the payment absolutely of a certain sum on a day named, with interest "payable semiannually on presentation of the interest warrants hereto attached," recited that they were issued under an order specified of the city council. The city treasurer, as instructed by the duly authorized committee of finance of the council, made with bankers an agreement to negotiate the bonds, which provided for calling annually a certain number of them by lot for redemption. A purchaser of such bonds, who had no knowledge of the agreement, or that by it they were subject to be called, sold them to a savings bank, and the bonds subsequently were called in for redemption, and payment refused of coupons maturing thereafter. *Held,* that the savings bank succeeded to an unimpeachable title from such purchaser, and, even if it had notice of the agreement, could enforce the bonds according to their tenor, and recover upon the interest warrants.

CONTRACT upon two interest coupons attached to bonds issued by the defendant city. The case was submitted to the Superior Court, and, after judgment for the plaintiff, to this court, on appeal, on an agreed statement of facts, the material part of which appears in the opinion.

*T. M. Babson*, for·the defendant.

*C. A. Welch*, for the plaintiff.

MORTON, C. J.    This is an action on two coupons, or interest warrants, which were annexed to two bonds issued by the city of·

Boston.  Each bond is an absolute promise to pay to the bearer " on the first day of July, 1899, the sum of one hundred pounds sterling, with interest at the rate of five per cent per annum, payable semiannually on presentation of the interest warrants hereto attached," and recites that this is " a stock created in pursuance of an order of the city council, approved the first day of June, 1869."   Each coupon or interest warrant is an absolute promise to pay to the bearer, on a given day, the sum of two pounds ten shillings sterling, for interest.   The order of June 1, 1869, referred to in the bonds, authorizes the committee on finance to consolidate several loans " into one loan to an amount not exceeding five million dollars ($5,000,000), to be styled and called the ' Consolidated Street Improvement Loan.' "   Acting under this order, the committee on finance issued bonds to the amount of five million dollars, all in the same form, of which the bonds held by the plaintiff are a part.   The city admits that this was within the authority conferred upon the committee on finance.   Their action was as follows.   The committee, on July 31, 1869, passed a vote authorizing the city treasurer to issue sterling bonds for the " Consolidated Street Improvement Loan," and to consign them for sale, under such limits as might be fixed from time to time by the committee, to Messrs. Baring Brothers & Co., and on October 15, 1869, it " voted, that the city treasurer be, and he hereby is, authorized to make such a disposition of the sterling bonds to be issued for the ' Consolidated Street Improvement Loan ' as in his opinion may be for the interest of the city."

The defendant offered to show that the treasurer, acting under this authority, entered into a written contract with Baring Brothers & Co., and in compliance with the contract Baring Brothers & Co. offered the bonds for public subscription, and the parties who originally purchased them bought and paid for them in accordance with the terms of said contract; that since January 1, 1871, the Barings have called annually one per cent of the bonds, and have thoroughly advertised said calling and drawing, so that the fact that the said bonds were liable to be redeemed before maturity was well known in financial circles in England, and that for this reason the bonds commanded a price less than the price of similar bonds not subject to annual

redemption by lot; and that the bonds held by the plaintiff had been drawn and called in for redemption and payment, as provided in said contract, prior to the maturity of the coupons sued on.

The second article of the contract referred to is as follows: " A sum of at least eight thousand pounds, being one per cent on the whole amount of the bonds, shall be set apart annually from and after first January, 1870, as a sinking fund for the said bonds, and shall be increased successively by the whole amount of interest corresponding to the bonds from time to time cancelled. The bonds to be redeemed at the counting-house of the said Messrs. Baring Brothers, and the redemption shall be annual, to commence on first January, 1871, by purchases at the market value, if the price be not above par, or by lot if the price be above par. Any portion of this loan which may remain uncancelled on first July, 1899, shall be repaid at that date and at par." In regard to this instrument, it is to be observed that it does not purport to be, and is not, a contract between the city and those who might become the bearers or holders of the bonds. It is a collateral contract between the city and Baring Brothers, entered into for the purpose of negotiating or placing the loan upon the market. It does not provide that the liability to annual redemption by lot of a part of the loan shall be a condition of the bonds to be issued; and the bonds which were subsequently issued contained no such condition, and no reference to the collateral contract, but were unconditional promises to pay the amount of each on the first day of July, 1899. Any person who bought the bonds in good faith, without knowledge of the contract with the Barings, could, without doubt, enforce them against the city according to their tenor. Whether the original subscribers to the loan, who took the bonds with notice of this collateral contract, would be affected by it, we need not inquire. We are concerned only with the rights of the plaintiff in this suit. It is admitted that the plaintiff bought its bonds of Blake Brothers & Co., in Boston, and that they had no knowledge of the collateral contract, or that the bonds were by it liable to annual redemption. Nor can it be claimed that they had any constructive notice of it. It is true, as stated by Chief Justice Waite in *McClure* v. *Oxford,*

94 U. S. 429, that " every dealer in municipal bonds, which upon their face refer to the statute under which they were issued, is bound to take notice of the statute and of all its requirements," — he must see at his peril that the bonds are legally issued. Any purchaser of the bonds in question, if he examined the records of the city, would see that the city treasurer had full authority to issue the bonds in the form in which they were issued. We do not think that he was bound, in the exercise of reasonable diligence, to go further, and look for an independent private agreement, which is unusual, and which he has no reason to suppose exists. The fact that such an agreement exists, and is entered on the records of the committee on finance, cannot justly be held to be constructive notice to him. It follows that the title of Blake Brothers & Co. in these bonds was unimpeachable, and they had the right to enforce them according to their tenor. It does not appear that the plaintiff had notice of the contract with Baring Brothers, though perhaps there is some evidence to go to a jury upon this point. But it is not material, for, even if the plaintiff had notice, it by its purchase took the unimpeachable title and right of Blake Brothers & Co.

If a purchaser with notice could be held to have a qualified title to the bonds, and to hold them subject to the condition that they might be redeemed before maturity, which we do not decide, it could only be upon the ground that he could not set up an absolute title without practising a fraud upon the city, and that therefore he is estopped from doing so. But a purchaser without notice would not be subject to such an estoppel, but takes a title purged of any fraud or infirmity. This title he can transfer, and it is immaterial whether the person to whom he transfers it knows of the taint or infirmity or not. Otherwise, though he holds a perfect title in himself, it would be destroyed or impaired in value. This principle is established by many authorities. *Trull* v. *Bigelow,* 16 Mass. 406. *Boynton* v. *Rees,* 8 Pick. 329. *Glidden* v. *Hunt,* 24 Pick. 221. *Flynt* v. *Arnold,* 2 Met. 619. *Grout* v. *Hill,* 4 Gray, 361. We are therefore of opinion, that the plaintiff is entitled to recover upon the coupons or interest warrants according to their tenor.

*Judgment for the plaintiff.*