FRANCISKA PAIKA & another *vs.* ARTHUR C. PERRY & another.

Worcester.   October 3, 1916. — January 8, 1917.

Present: RUGG, C. J., LORING, BRALEY, CROSBY, & PIERCE, JJ.

*Equity Jurisdiction,* To set aside conveyance procured by fraud, To redeem real estate from mortgage. *Bills and Notes. Equity Pleading and Practice,* Decree, Appeal, Costs. *Res Judicata.*

In a suit in equity to compel the cancellation of a negotiable promissory note and a mortgage of real estate securing it, which were purchased by the defendant from one who obtained them from the plaintiff by fraud, it is not necessary for the plaintiff, in order to show that the defendant had "knowledge of such facts that his action in taking the instrument amounted to bad faith" within the meaning of R. L. c. 73, § 73, to prove that the defendant knew the exact fraud that was practiced upon the plaintiff by the defendant's assignor, it being sufficient to show that the defendant had notice that there was something wrong about his assignor's acquisition of title although he did not have notice of the particular wrong that was committed.

In a suit in equity to set aside a mortgage of real estate alleged to have been procured from the plaintiffs by fraud, or to redeem the plaintiffs' land from such mortgage, it appeared that the plaintiffs were illiterate foreigners who understood no English, that the defendant M, intending not to perform such agreement, agreed to remodel a certain building belonging to the plaintiffs, and

fraudulently procured the execution and acknowledgment by the plaintiffs of a mortgage note and mortgage for $1,500, the plaintiffs being induced to believe that they were signing a building contract, that the defendant M immediately borrowed $500 from one J and indorsed the note and assigned the mortgage to J, who took them in entire good faith, that thereafter the defendant M, having done none of the work that he had agreed to do, borrowed $1,350 from the defendant P, who paid off the amount of $540 due to J and took an assignment of the note and mortgage, that the defendant P, when he took this assignment, knew that by M's agreement with the plaintiffs no mortgage was to be given until the work of remodelling had been performed and that the mortgage had been given before any work had been done, and that no work at all had been done although two months had expired, that P also knew that the plaintiffs were foreigners and were illiterate persons and that they had executed the note and mortgage by making their marks. *Held*, that it was plain that under R. L. c. 73, §§ 72, 73, the note and mortgage were voidable in the hands of M and that under R. L. c. 73, § 69, they were valid in the hands of J to the extent of the loan made by him to M; that the defendant P in lending $1,350 upon the plaintiffs' note and mortgage for $1,500 had knowledge of such facts that he took the note and mortgage in bad faith with notice within the meaning of R. L. c. 73, § 73, although by taking the assignment from J, the *bona fide* mortgagee, he had become entitled to hold the mortgage to the amount of $540; and that therefore the plaintiffs had the right to redeem the mortgaged property by paying to the defendant P $540 and interest.

In the case above described it appeared that the plaintiffs had not asked to have a clause inserted in the decree ordering the defendant M to pay to them the sum of $540 which they were forced to pay in order to redeem their property from the defendant P, and that neither the plaintiffs nor M had appealed from the decree. *Held*, that, although the plaintiffs would have been entitled to such relief if they had asked for it and had appealed from the decree because it was not given to them, they now must resort to an independent action against M to recover the sum so paid in redemption when they had paid it.

It also was *said*, that under the circumstances stated above the decree in this suit would not be a bar to such an action at law.

In the suit in equity above described it was ordered that the plaintiffs should recover from the defendant P their costs taxed in the sum of $35.70 and the further costs of the appeal to this court, and that for the costs amounting to $35.70 there was to be but one satisfaction.

BILL IN EQUITY, filed in the Superior Court on March 10 and amended on June 9, 1913, by Franciska Paika and Walenty Paika against Arthur C. Perry and Frank P. Mosher, all of Worcester, which is described in the opinion.

The case was referred to a master who filed a report, and thereafter the case was heard, upon a motion that the report of the master be confirmed, by *Callahan*, J., who made an interlocutory decree that the report be confirmed.

Later by order of *Callahan*, J., a final decree was entered enjoining the defendants Perry and Mosher from selling, mortgaging,

assigning, transferring, or directly or indirectly encumbering or disposing of the real estate in question, and from directly or indirectly selling, assigning, transferring or disposing of the mortgage of the said property for $1,500, and from directly or indirectly selling, assigning, transferring or disposing of the note for $1,500 payable to Frank P. Mosher and signed by the plaintiffs and ordering the defendants or either of them to discharge said mortgage and to surrender said note to the plaintiffs and ordering the defendant Perry to convey the mortgaged premises by a good and sufficient quitclaim deed to the plaintiffs, Franciska Paika and Walenty Paika, and adjudging that nothing is due either Perry or Mosher from Franciska Paika or Walenty Paika, and it further was ordered that the plaintiffs recover of the defendants costs taxed in the sum of $35.70, and that execution issue for that amount against the defendants.

The defendant Perry appealed from the decree.

The case was submitted on briefs.

R. L. c. 73, §§ 73, 74, are as follows:

"Section 73. To constitute notice of an infirmity in the instrument or defect in the title of the person negotiating the same the person to whom it is negotiated must have had actual knowledge of the infirmity or defect, or knowledge of such facts that his action in taking the instrument amounted to bad faith.

"Section 74. A holder in due course holds the instrument free from any defect or title of prior parties, and free from defences available to prior parties among themselves, and may enforce payment of the instrument for the full amount thereof against all parties liable thereon."

R. L. c. 73, § 69, is as follows:

"Section 69. A holder in due course is a holder who has taken the instrument under the following conditions:

1. That it is complete and regular upon its face;

2. That he became the holder of it before it was overdue, and without notice that it had been previously dishonored, if such was the fact;

3. That he took it in good faith and for value;

4. That at the time it was negotiated to him he had no notice of any infirmity in the instrument or defect in the title of the person negotiating it."

*R. B. Dodge, W. J. Taft & A. P. Saunders,* for the defendant Perry.

*G. P. Beckford,* for the plaintiffs.

LORING, J. This is a bill to set aside a mortgage or in the alternative to be allowed to redeem it. The case went to a master and on his report a decree was entered in effect setting the mortgage aside. From that decree the defendant Perry took the appeal which is now before us.

The facts found by the master were in substance as follows: The plaintiffs were the owners of a building which they wished to have remodelled. On July 8, 1911, they made a contract with the defendant Mosher to do the work they wished done upon the building. The contract was an oral one. Later Mosher put it in writing and the master found that the writing contained the terms of the oral agreement. After stating the work to be done the contract was in these words: "And in consideration of the foregoing the said Paika does hereby agree to pay to the said Mosher the sum of $1,800 as follows: Three hundred at a time agreed upon. A second mortgage on property at 9, 11, 11½ Taylor Street, for $1,500. This mortgage is payable $50$\frac{00}{100}$ semi-annually with interest at 5%." The plaintiffs were foreigners; they could not read or write and did not understand the English language. When he made the contract Mosher had "no intention of ever attempting to fulfil his part" of it. Three days after the oral contract was made (that is, on July 11, 1911) Mosher presented to the plaintiffs a promissory note for $1,500 and a mortgage on the plaintiffs' land securing the same. These "he told them [the plaintiffs] were the building contracts above referred to" and he asked the plaintiffs to sign them. The plaintiffs were accompanied by two interpreters who told the justice of the peace who took the acknowledgment of the mortgage that the plaintiffs understood the instruments. Relying upon the representations of Mosher and thinking the instruments executed by them were copies of the building contract they executed the note and mortgage and acknowledged the mortgage to be their free act and deed. These were executed by the plaintiffs "by making their marks." On the thirty-first of the same month Mosher borrowed $500 of one Johnson and duly indorsed the note and assigned the mortgage to him. The master found that Johnson "acted in entire good

faith in taking said note and mortgage." On the sixteenth day of the following September Mosher borrowed of the defendant Perry $1,350. At the request of Mosher $540 of this loan was applied by Perry in taking up Johnson's title to the note and the mortgage by which it was secured. The note was duly indorsed and the mortgage assigned by Johnson to Perry.

It is plain that in the hands of Mosher the mortgage and mortgage note were procured by fraud and so were voidable. R. L. c. 73, §§ 72, 73.

It is also plain that in the hands of Johnson the note and the mortgage were valid to the extent of the loan made by Johnson to Mosher, R. L. c. 73, § 69, *New England Trust Co.* v. *New York Belting & Packing Co.* 166 Mass. 42, and *Burnes* v. *New Mineral Fertilizer Co.* 218 Mass. 300, where the earlier cases are collected; and that Johnson's title to the note and the mortgage passed to Perry from Johnson. R. L. c. 73, § 75. *Thompson* v. *Shepherd,* 12 Met. 311. *Fowler* v. *Strickland,* 107 Mass. 552. *Suffolk Savings Bank* v. *Boston,* 149 Mass. 364, and cases there collected. *Symonds* v. *Riley,* 188 Mass. 470.

The question which we have to decide is whether Perry has a right to hold the note and the mortgage by which it is secured for the balance of the $1,350 lent by him to Mosher.

Upon that issue the master made the following findings: In the first place he found that Perry "before he took an assignment of the mortgage . . . knew that said mortgage was without consideration." He also found that Perry "before he took this mortgage . . . which was assigned to him by said Charles R. Johnson, made several visits to said Taylor Street property to ascertain for himself as to what work had been done upon the property by said Frank P. Mosher in connection with the building contract that Mosher claimed he had made with said·plaintiffs." In addition he found "that said Arthur C. Perry had knowledge of this building contract and that he knew no work had been done by Mosher upon said Taylor Street property in regard to carrying out this building contract." The master, although asked to do so, refused to find that Perry "before he took an assignment of the mortgage . . . knew that the defendant Mosher had given nothing of value for said mortgage, and that he did not intend to give anything of value for said mortgage;" and also (although requested)

he refused to find that Perry "before he took an assignment of the mortgage . . . knew that said Frank P. Mosher had done nothing toward the remodelling of the buildings, and that he did not intend to do anything toward the remodelling of the buildings."

We are of opinion that on these findings the plaintiffs cannot attack Perry's title on the ground that there was a total failure of consideration for the mortgage note. We assume that this is what was meant by the finding "that the respondent Arthur C. Perry before he took an assignment of the mortgage described in the complainants' bill knew that said mortgage was without consideration." No time was specified in the agreement when the work was to be done. The assignment of the mortgage to Perry was on the sixteenth day of September, that is to say, a little more than two months after the contract was made. A party is entitled to recover on the ground of total failure of consideration where it turns out that the vendor had no title to the property for which the plaintiff paid him, see for example *Rice* v. *Goddard*, 14 Pick. 293; *Stone* v. *Fowle*, 22 Pick. 166; *Rock* v. *Nichols*, 3 Allen, 342; or where the patent, for example, for which the plaintiff paid was void and so of no value, see *Harlow* v. *Putnam*, 124 Mass. 553, and cases there collected. It can hardly be held that there was a total failure of consideration in the case at bar because at the end of a little over two months Mosher had not begun to do the work which he was bound to do under the contract.

But we are of opinion and we find that so far as Perry took title to the note and mortgage under Mosher he took with notice of the defect in Mosher's title and got no better title than Mosher had. The facts which had come to Perry's knowledge were these: He knew in the first place that there was no provision in Mosher's agreement with the plaintiffs that payment was to be made in advance. That is to say he knew that the mortgage was not to be given until the work had been performed. He knew also in spite of that fact that the mortgage had been given before any work had been done and that no work had been done for over two months after the mortgage was given. He knew that the mortgage was executed by the plaintiffs making their marks. That is to say, he knew the plaintiffs were illiterate persons. He knew from their name if not from the fact that he went to the place and examined the building that they were foreigners. On

these facts we are of opinion and we find that in lending Mosher $1,350 upon the faith of this note for $1,500 and of the mortgage securing same Perry had knowledge of such facts that his action in taking the note and mortgage amounted to bad faith and so that he took with notice within R. L. c. 73, § 73.

On the findings of the master, or more accurately on what the master refused to find, it must be taken that Perry did not know the exact fraud practised by Mosher on the plaintiffs. But to make out the fact that he took with notice that is not necessary. It was established before the negotiable instruments statutes were enacted that a transferee takes with notice if he has notice that there is something wrong although he does not have notice of the particular wrong which was committed. See, for example, Lord Blackburn in *Jones* v. *Gordon,* 2 App. Cas. 616, 628; and see in this connection *Knapp* v. *Lee,* 3 Pick. 452; *Perth Amboy Mutual Loan Association* v. *Chapman,* 80 App. Div. (N. Y.) 556, affirmed in 178 N. Y. 558; *Ormsbee* v. *Howe,* 54 Vt. 182; *Hager* v. *National German-American Bank,* 105 Ga. 116; *Old National Bank of Fort Wayne* v. *Marcy,* 79 Ark. 149; *Henry* v. *Sneed,* 99 Mo. 407. The provisions of R. L. c. 73, § 73, are an enactment of the common law and this rule as to notice must be taken to be the rule under that act.

As matter of construction of the terms of the loan made by Mosher to Perry it must be taken that Perry applied $540 of the money lent by him to taking up Johnson's title. The result is that upon Johnson indorsing the note and assigning the mortgage to him Perry became entitled to hold the $1,500 mortgage to the amount of the $540. It follows that the plaintiffs have a right to redeem the mortgage on paying to Perry the $540 with interest at five per cent from September 16, 1911, the date when he paid the $540 to Johnson. The plaintiffs had a right to recover from Mosher the money which the plaintiffs are now forced to pay to Perry to redeem their property from the mortgage which Mosher procured by fraud from them. If the plaintiffs had asked for it they could have had a clause to that effect put in the decree. But they now must resort to an independent action to recover that sum. The plaintiffs took no appeal from the decree. Neither the plaintiffs nor Mosher having taken an appeal from the decree the decree appealed from must stand so far as they are concerned.

Under the circumstances the decree in this suit will not prevent the plaintiffs recovering from Mosher in an independent action the sum so paid by them when they have paid it. The decree should be modified so as to apply to Mosher alone.

So far as the defendant Perry is concerned the decree is to be reversed and a decree entered providing that upon the plaintiffs paying to him (the defendant Perry) the sum of $540 with interest at the rate of five per cent per annum from September 16, 1911, he shall cancel the note and discharge the mortgage and that the plaintiffs recover from Perry their costs taxed in the sum of $35.70 and the further costs of this appeal and that execution issue therefor. So far as the costs amounting to $35.70 are concerned there is to be but one satisfaction.

*So ordered.*