MARGARET M. SULLIVAN & another *vs.* MARY J. SULLIVAN.

Middlesex.     December 6, 1946. — March 6, 1947.

Present: FIELD, C.J., LUMMUS, QUA, DOLAN, & RONAN, JJ.

*Lien. Equity Jurisdiction,* Tracing of property. *Mortgage,* Of real estate: foreclosure. *Bona Fide Purchaser. Trust,* Constructive trust. *Damages,* Constructive trust.

Land, which had been subject to an equitable lien in favor of children of a father who, in breach of his fiduciary duty, had used toward its purchase and conveyance to himself money of theirs in his possession as their guardian, was freed of such lien and did not afterwards become charged with a constructive trust in favor of the children when it was conveyed to their stepmother by one who purchased it at a foreclosure sale under a first mortgage to a bank, placed thereon when it was purchased by the father, even if the stepmother had had notice of the father's breach of trust, where there was no evidence and no contention that the bank had any knowledge that any money connected with the transaction had been used by the father in breach of trust: the children had had no equitable lien on or other interest in the bank's paramount legal title, and the stepmother as grantee of the purchaser at the foreclosure sale had the full benefit of that title.

A suit in equity against one who had purchased land sold to another in foreclosure of a first mortgage thereon could not be maintained for a sum of money which had belonged to the plaintiffs but which, with knowledge of the defendant, their father had misappropriated and had used in purchase of the land in his own name at the same time when he had placed the first mortgage thereon, even if, with knowledge of the father's breach of trust, the defendant had received conveyance from him subject to the mortgage six years before its foreclosure.

If there is a remedy by damages against one holding property on a constructive trust arising out of a misappropriation of the plaintiff's funds in a purchase of the property, the measure of damages would be the value of the property with interest or profits from its use, and not the amount of money misappropriated.

BILL IN EQUITY, filed in the Superior Court on April 1, 1946.

The case was heard by *O'Connell*, J.

In this court the case was submitted on briefs.

*H. M. Lichtenstein*, for the plaintiffs.

*R. Maguire*, for the defendant.

QUA, J. The plaintiffs are the daughters of John P. Sullivan, deceased. The defendant is their stepmother. She married Sullivan in 1925 shortly after the decease of the plaintiffs' own mother while the plaintiffs were small children. The plaintiffs received $820.50 as the proceeds of insurance policies upon their mother's life. This money came into the hands of Sullivan, their father, as their duly appointed guardian. He died in 1946. The plaintiffs, having come of age, seek by their bill to hold the defendant, their stepmother, as constructive trustee for the money and to enforce a charge for it upon a house and land in Newton standing in her name.

The trial judge found that the plaintiffs had not established a constructive trust "to which the defendant was a party," and that the real estate now owned by her is not chargeable as claimed. The plaintiffs appeal. The evidence is reported.

The salient facts, about which there appears to be scarcely any dispute, are these: On October 13, 1925, Sullivan bought the real estate, received a deed thereof, and placed thereon a first mortgage to the Newton Coöperative Bank and a mortgage for $800 to the plaintiffs. These papers were duly recorded. The plaintiffs' mortgage was expressed to be subject to the bank's mortgage and to a second mortgage to the wife of the seller. The amounts of the bank's mortgage and of any mortgage to the seller's wife and of the total purchase price do not appear. Neither does the value of the property. In making this purchase Sullivan used $800 of the money which was in his hands as guardian of the plaintiffs. He took the title in his own individual name. Nearly five years later, under date of June 9, 1930, he conveyed the premises "for consideration paid" to the defendant "subject to" the three mortgages hereinbefore mentioned. Under date of February 6, 1934, he purported as guardian of the plaintiffs to discharge the mortgage he had given to them. In 1936 the bank foreclosed its mortgage, and thereafter conveyed the premises to one Coakley, who a short time later conveyed them to the defendant.

When Sullivan used the money of his wards, the plain-

tiffs, to buy real estate in his own name, he committed a breach of his fiduciary duty and became liable for the misappropriated money. The plaintiffs could follow the money into Sullivan's interest in the real estate upon which they acquired at least an .equitable lien for reimbursement. *Bresnihan* v. *Sheehan*, 125 Mass. 11. *Warner* v. *Morse*, 149 Mass. 400, 403. *Locke* v. *Old Colony Trust Co.* 289 Mass. 245, 252–253. *Berry* v. *Kyes*, 304 Mass. 56, 59. *Tierney* v. *Coolidge*, 308 Mass. 255, 259. Scott on Trusts, § 516. See *Parker* v. *Lloyd*, ante, 126. They could do this without any regard to the third mortgage which Sullivan purported to give them and which he later purported to discharge. It may be that the plaintiffs could have elected to claim a constructive trust in Sullivan's title to the land instead of a mere lien thereon. However, the judge did not find that Sullivan's title was wholly the product of the plaintiffs' money with no admixture of his own, and the evidence fails to provide any foundation for a constructive trust, since it does not satisfactorily disclose what proportion of the price of Sullivan's title consisted of the plaintiffs' money, and does not show that it was impossible to prove the proportion. Scott on Trusts, § 516. Compare *Snailham* v. *Isherwood*, 151 Mass. 317, 321. And compare further *Bresnihan* v. *Sheehan*, 125 Mass. 11, 13. But in any event it is hard to see how the plaintiffs could trace any part of their money into the bank's mortgage. The bank acquired its legal title in mortgage at the same time at which Sullivan acquired his title in the equity of redemption and by the same transaction. The only reasonable inference would seem to be that the bank's mortgage was wholly the product of the bank's money and in no part the product of the plaintiffs' money. The bank advanced its money for a first mortgage and for no other interest in the property. See Scott on Trusts, § 516.2; Restatement: Restitution, § 210, comment f. But apart from this there can be no doubt that the bank was a purchaser for value, and there is no evidence and no contention that it had any knowledge that any money connected with the transaction had been acquired by Sullivan through breach of trust.

The burden rested upon the plaintiffs to prove that the bank was not a bona fide purchaser. *Molony* v. *Rourke*, 100 Mass. 190. *Batchelder* v. *Central National Bank*, 188 Mass. 25. *Flannagan* v. *Keefe*, 250 Mass. 118, 121–122. *Arena* v. *Erler*, 300 Mass. 144, 146. Langdell, Summary of Equity Pleading, 90–91. For the reasons stated the plaintiffs acquired no equitable lien upon or other interest in the bank's mortgage title.

It follows that when the bank foreclosed and its title subsequently came into the hands of the defendant she took free of the lien of the plaintiffs. She now has the full benefit of the bank's paramount legal title, which was never charged with any equitable lien. This is true even if the defendant was a volunteer and had notice of the breach of trust when in 1930 she took a deed of Sullivan's equity of redemption, or if she acquired notice later. Equitable interests are cut off when the property passes through the hands of a bona fide purchaser. *Suffolk Savings Bank* v. *Boston*, 149 Mass. 364. *La Fleur* v. *Chace*, 171 Mass. 59. *Paika* v. *Perry*, 225 Mass. 563. *Flannagan* v. *Keefe*, 250 Mass. 118, 122. *United States Fidelity & Guaranty Co.* v. *English Construction Co.* 303 Mass. 105, 115. Restatement: Trusts, § 316. Scott on Trusts, § 316. There was no evidence of fraud or collusion in the bank's foreclosure.

The plaintiffs argue that they have a right to recover money from the defendant. But the defendant never had any of the plaintiffs' money and, so far as appears, had no part in the original breach of trust. At most, on this record, the defendant took Sullivan's title to the real estate in 1930, at a time when that title would be subject to an equity in favor of the plaintiffs as against any holder of that title other than a purchaser for value without notice, but the defendant has since acquired through the bank a paramount title not subject to that equity. There is nothing in this that gives the plaintiffs a right to recover money from the defendant. Even if the evidence would support a finding of a constructive trust against the land in Sullivan's hands, which for reasons already stated we think it would not, and if such trust became enforceable against the defendant when

she acquired Sullivan's title and before she acquired the bank's title (see Scott on Trusts, § 291.2; *Otis* v. *Otis,* 167 Mass. 245, 247; *Sargent* v. *Wood,* 196 Mass. 1; *Berry* v. *Kyes,* 304 Mass. 56, 59; *Milbank* v. *J. C. Littlefield, Inc.* 310 Mass. 55, 64, and cases cited), still on this record we need not consider whether such a trust could be enforced by a decree for damages, for the further reason that there is no evidence of the value of the property or of any profit received by the defendant therefrom. The measure of damages, if there is a remedy by way of damages in such a case, would be the value of the property held upon constructive trust, with interest or profits from its use, and not the $800 originally taken from the plaintiffs. Scott on Trusts, § 291.2, at page 1608.

It will be observed that we have dealt with the case as if the defendant had had notice of Sullivan's breach of trust. There is, however, no finding to that effect, and there is no very clear evidence of that fact.

We are compelled to conclude that the plaintiffs have not made out a case.

There was no error in admitting in evidence the deed from the bank to Coakley and the deed from Coakley to the defendant. These deeds were material to show the true state of the title upon which the plaintiffs by the third prayer of their bill were apparently seeking to impose a charge.

We do not understand why the bill was dismissed "without prejudice," but the defendant has not raised the point by appealing.

This is the opinion of a majority of the court.

*Decree affirmed.*