ELIZABETH W. SHAW *vs.* VICTORIA COACH LINE, INC.

Suffolk.      May 10, 1943. — June 29, 1943.

Present: FIELD, C.J., DONAHUE, QUA, DOLAN, & RONAN, JJ.

*Release. Fraud. Contract,* Construction. *Practice, Civil,* Question of law or fact.

The interpretation of a written release and of a draft containing a release, both introduced in evidence at a trial, was a question of law for the trial judge.

A draft, having on its back a statement that indorsement or deposit by the payee "is acknowledgment by payee of acceptance of this draft in full settlement of items as stated on face hereof" and having on its face a statement that when properly indorsed "this draft becomes and constitutes a release in full for the payment of" a "claim for damages due to personal injuries," when indorsed and collected by

the payee, would be a release of such claim if nothing appeared to establish its invalidity.

Evidence that a woman, suffering mentally and physically from an accident and believing that she was settling a claim for property damaged in the accident, signed without reading a general release at the request of an insurance adjuster who knew of her condition and belief and described the release to her as a "receipt," and that a few days later, still so suffering, she indorsed and deposited a draft for a small amount given her by the adjuster which contained provisions to the effect that it should constitute a release of "claim for damages due to personal injuries" upon being indorsed or deposited, warranted a finding that both the general release and the release contained in the draft were procured by fraud of the adjuster.

TORT for personal injuries and property damage. Writ in the Municipal Court of the City of Boston dated November 16, 1937.

Upon removal to the Superior Court, the action was tried before *Brown*, J. There was a verdict for the plaintiff, and the defendant alleged exceptions.

*J. G. Ashe*, for the defendant.

*C. C. Steadman*, for the plaintiff.

RONAN, J. The plaintiff, a school teacher sixty-three years of age, was travelling on January 2, 1937, as a passenger on the front seat of an automobile bus on a trip from Boston to Hartford when the automobile skidded along a highway in Stafford Springs, Connecticut, and ran against an embankment, throwing the plaintiff forward and bringing her head in contact with the windshield with such force as to break the windshield; she was then precipitated to the floor of the automobile. She was so stunned by the accident that she did not apprehend her surroundings for a few seconds. She waited at Stafford Springs for three and one half hours before another automobile arrived and took her and the other passengers to Hartford. While at Stafford Springs, she knew when someone spoke to her but she could not think normally and at times experienced hallucinations. She had someone telephone to her husband and she gave a passenger the name of a person, and gave her the money for a telephone call to Boston, and the plaintiff talked with that person. She was stupid when she arrived at the defendant's terminal and did not go into the station

with the other passengers. The operator of the automobile said he would assist her and she consented to go in. She was ushered into a room and met a man who she thought was the defendant's manager. He was an insurance adjuster. She was too dazed to remember what he said to her but she recalled that she said something about the broken umbrella that she had in her hands. She told him her umbrella was broken. He handed her a check for $20 and asked her if that was all right. She stated that the umbrella cost only $10. He said, "That is all right, sign this receipt." She told him she could not use her hand, and he put his pen in her hand and signed the paper. This was done so quickly she did not have a chance to think. She was too dazed to realize what was going on and did not read the paper. This paper was a general release. The draft that was then given to her contained this printed statement on its face: "When properly endorsed on the back hereof, this draft becomes and constitutes a release in full for the payment of: — (Describe fully nature of payment and whether for damages or loss medical or expense)," and there was written after this statement: "Claim for damages due to personal injuries." There was a legend on the back of this draft which read: "Endorsement by payee or deposit in bank for account of payee is acknowledgment by payee of acceptance of this draft in full settlement of items as stated on face hereof." The plaintiff, some time between January 2, 1937, and January 6, 1937, indorsed the draft immediately under this legend. The draft was deposited by her husband and she received the money. We have now recited some of the material facts which the jury could find from the testimony. There was other testimony tending to show that the plaintiff knew that a settlement for her injuries was being made at the time the release was executed and the draft accepted. The jury had the right to disbelieve this testimony. The jury returned a verdict for the plaintiff. The case is here on exceptions to the denial of a motion for a directed verdict and to that part of the charge in which the jury were told that the draft was not a release.

The accident and the alleged release of the cause of action occurred in Connecticut and were governed by the law of that State, but the action was tried in our Superior Court in accordance with our own common law and there was no contention made there or in the argument before this court that there was any material difference between the common law of that State and our own. No question is raised but that the evidence was sufficient to warrant a finding that the defendant was negligent and that the plaintiff was free from contributory negligence. All that is open for decision is whether the plaintiff had released her cause of action and whether there was error in the charge.

The release and draft were introduced in evidence without objection. The answer, which set up a release, was broad enough to permit the defendant to contend that the draft when paid was also a release. The draft was given for the release, and the draft itself stated that it constituted a release when it was deposited by the plaintiff. Both instruments were parts of the same transaction and must be construed together to determine the arrangement into which the parties had entered. *Bielanski* v. *Westfield Savings Bank*, 313 Mass. 577, 579–580. The interpretation of both instruments was a question of law to be decided by the judge. *Rizzo* v. *Cunningham*, 303 Mass. 16, 20. The indorsement was acknowledgment by the plaintiff that the draft was in full settlement of her "Claim for damages due to personal injuries." We need not decide whether, if the indorsement stood alone, it was merely a receipt or a release (see *Brown* v. *Cambridge*, 3 Allen, 474; *Goss* v. *Ellison*, 136 Mass. 503; *Squires* v. *Amherst*, 145 Mass. 192; *Rosenblatt* v. *Holstein Rubber Co.* 281 Mass. 297; *Campbell* v *Boston*, 283 Mass. 365), because the indorsement did not stand alone for the draft provided that the indorsement would constitute a full release of her claim for injuries. The draft must be construed in accordance with its terms. When indorsed by the plaintiff it would, unless avoided on account of fraud, become a release and the jury should have been so instructed. *Grace* v. *Adams*, 100 Mass. 505. *Grinnell* v. *Western Union Telegraph Co.* 113 Mass. 299.

*Fonseca* v. *Cunard Steamship Co.* 153 Mass. 553. *Tremont Trust Co.* v. *Burack,* 235 Mass. 398. *Alemian* v. *American Express Co.* 237 Mass. 580. *Long* v. *Agricultural Ins. Co.* 257 Mass. 240. *Wilkisius* v. *Sheehan,* 258 Mass. 240. *Paulink* v. *American Express Co.* 265 Mass. 182. Releases have been included within the terms of a draft for the purpose of settling tort claims. *Tyner* v. *Axt,* 113 Cal. App. 408. *Yelloway, Inc.* v. *Garretson,* 89 Colo. 375. *Higgins* v. *American Car Co.* 324 Mo. 189. *McNamara* v. *Eastman Kodak Co.* 232 N. Y. 18. *Wood* v. *Young,* 127 Ore. 235. *Doneyho* v. *Scottdale Connecting Railroad,* 330 Penn. St. 207.

The general release and the collection of the draft would, in so far as the instruments themselves were concerned, constitute a release, which would prevent the plaintiff from maintaining an action at law for personal injuries unless she sustained the burden of showing that the circumstances attending the execution of the release and the delivery and collection of the draft were such as to enable her to avoid the purported effect of these instruments. *Griffin* v. *New York, New Haven & Hartford Railroad,* 279 Mass. 511. *Strong* v. *Boston Mutual Life Ins. Co.* 283 Mass. 88. *MacDonald* v. *MacDonald,* 291 Mass. 299. *Barletta* v. *New York, New Haven & Hartford Railroad,* 297 Mass. 275.

The evidence tended to show that the plaintiff was suffering mentally and physically from the effects of the accident at the time the release was signed. The plaintiff maintains that she was intentionally induced by the false and fraudulent representation and conduct of the adjuster to execute the release and to accept and collect the draft under the belief, which she reasonably entertained, that all that was involved was her claim for property damage.

The fact that the plaintiff did not read the release or read the draft would not alone excuse her from the obligation expressed in them. *Rosenberg* v. *Doe,* 146 Mass. 191. *McNamara* v. *Boston Elevated Railway,* 197 Mass. 383. *Atlas Shoe Co.* v. *Bloom,* 209 Mass. 563. The amount of the draft exceeded the cost of the umbrella which, so far as her testimony went, was the only item of property damage that she mentioned to the adjuster. The fact that she told him

the cost of the umbrella could be found to indicate that she thought she was settling for property damage, and, if she misunderstood his offer, his alleged remark that it was all right might be found to show that he failed to correct her and permitted her to continue in that belief.  The jury could find that the adjuster knew that she was suffering mentally and physically from the effects of the accident although he might not have known the extent of her injuries.  Impairment of mental faculties, which lessen the ability of one to safeguard and protect his interests, is a factor that ought to be considered in determining whether he has been imposed upon by the fraudulent representations of another. *Bliss* v. *New York Central & Hudson River Railroad*, 160 Mass. 447.  *Neill* v. *Brackett*, 241 Mass. 534, 537.  *Eddy* v. *Eddy*, 281 Mass. 156, 159.

The jury could find that the adjuster did not state that the paper was a release of her claim for personal injuries caused by the accident and that he made no mention of a release but referred to the paper as a receipt.  The request by the adjuster to "sign this receipt" immediately preceded the signing of the paper.  His statement as to the purport and nature of the instrument was false.  It could be found that it was intended by him as a statement of fact and that it should be so understood by the plaintiff.  The offering of an instrument for one's signature with such a fraudulent characterization as to its substance and tenor for the purpose of securing the signature may be found to be a fraud.  The whole conduct of the adjuster was to be considered by the jury in determining whether he deliberately misled the plaintiff to believe that she was dealing only with property damage, and whether she was acting reasonably in adopting that belief. *Trambly* v. *Ricard*, 130 Mass. 259.  *O'Donnell* v. *Clinton*, 145 Mass. 461.  *Larsson* v. *Metropolitan Stock Exchange*, 200 Mass. 367.  *Boston Five Cents Savings Bank* v. *Brooks*, 309 Mass. 52.  It was a question of fact whether the signature of the plaintiff to the release was procured by the deception of the adjuster. *Freedley* v. *French*, 154 Mass. 339.  *Kean* v. *New York Central & Hudson River Railroad*, 210 Mass. 449.  *Barry* v. *Mutual Life*

*Ins. Co.* 211 Mass. 306. *Rocci* v. *Massachusetts Accident Co.* 222 Mass. 336. *Fournier* v. *Holyoke Street Railway,* 258 Mass. 257.

Our next inquiry is whether the indorsement of the draft and the receipt of its proceeds by the plaintiff bars the maintenance of her action. Ordinarily, the collection of a draft which according to its tenor is given in full settlement of an unliquidated claim extinguishes the claim, for one cannot accept and cash such an instrument without being bound by the terms expressed therein. *Whittaker Chain Tread Co.* v. *Standard Auto Supply Co.* 216 Mass. 204, 206. *Rosenblatt* v. *Holstein Rubber Co.* 281 Mass. 297, 300. On the other hand, the claim is not discharged, if the drawee was induced to cash the draft by the fraudulent misrepresentation of the drawer that it was given for a purpose other than in settlement of the claim. *Mullen* v. *Old Colony Railroad,* 127 Mass. 86. *Bliss* v. *New York Central & Hudson River Railroad,* 160 Mass. 447. *Connors* v. *Richards,* 230 Mass. 436. *Barrett* v. *Conragan,* 302 Mass. 33.

There was evidence that the plaintiff was seriously injured as a result of the accident; that in response to her request the defendant sent a physician to treat her on the day following the accident; that she then attempted during the week of the accident to resume her duties as a teacher, but was unable to perform her work properly; that she continued teaching during "that week and then just collapsed"; and that after spending a week at home she went to a sanatorium where she was confined for four months. There was testimony that the draft was deposited by the plaintiff's husband in her savings account on January 6, 1937. Upon this testimony the jury would have been warranted in finding that, on account of the physical and mental condition of the plaintiff, she did not realize that the draft was given in full discharge of all her claims against the defendant and that she was justified, as a result of the deception of the adjuster, in believing that the draft, as well as the release, was given in settlement of her claim for property damage. *Bliss* v. *New York Central & Hudson*

*River Railroad,* 160 Mass. 447. *Connors v. Richards,* 230 Mass. 436.

Whether the execution of the release and the indorsement and cashing of the draft were procured by the false and fraudulent representation of the adjuster were questions of fact that were properly submitted to the jury, but there was error, for reasons already stated, in charging the jury that the draft could not constitute a release.

*Exceptions sustained.*