ALBERT I. COHEN, trustee in bankruptcy, *vs.* LUIGI
SANTOIANNI & others.

Suffolk.    April 6, 1953. — May 1, 1953.

Present: QUA, C.J., LUMMUS, WILKINS, & WILLIAMS, JJ.

*Equity Pleading and Practice*, Report of evidence, Appeal, Waiver, Re-
hearing. *Fraud. Waiver.*

Printing by a party to a suit in equity of portions of the testimony as
an appendix to his brief before this court in lieu of filing a counter
designation under Rule 2 (C) of the Rules for the Regulation of Prac-
tice before the Full Court (1952) was improper.  [189]
A lessee as plaintiff in a suit in equity for a declaration of rights under
the lease, by proceeding to a hearing on the merits without demurring
to the lessor's answer and counterclaim, waived the point that al-
legations therein of fraud in obtaining the lease were insufficient.
[190]
Upon appeal from a final decree in a suit in equity, with a report of the
evidence and a report of material facts by the trial judge, the decree
must be reversed if the reported facts do not support it unless the
evidence reported shows that the decree was right.  [190]
A finding by the trial judge in a suit in equity that a son obtained a
lease of premises from his parents by fraud was plainly wrong on
reported evidence merely disclosing that the parents were not able
to write or to read, that the son procured the lease to be drawn by
his lawyer, who gave no copy to the parents, that the lease was not
read to the parents before it was given by them, that it was for a long
term for which the mother had twice previously refused to give a
lease, and that its provisions were unusual and very favorable to the
son.  [192–193]
Upon appeal from an erroneous final decree in a suit in equity for a
declaration of rights under a lease, this court, deeming that there
should be a rehearing in the trial court in view of the unsatisfactory
state of the pleadings and of the record, merely reversed the decree.
[193]

BILL IN EQUITY, filed in the Superior Court on November
14, 1950.

The suit was heard by *Good*, J.

*John P. Curran*, for Reconstruction Finance Corporation,
intervener.

*Paul G. Counihan*, for the defendant Luigi Santoianni.

WILKINS, J.   This bill in equity was brought originally by John Santiano, also known as John Santoianni, against his father, Luigi Santoianni, for a binding declaration of rights under a lease of a store in East Boston.   The lease, dated July 10, 1946, was purportedly given by Luigi and his wife Leonarda (now deceased) to their son John (hereinafter sometimes called the plaintiff) for a term of fifty years. After John was adjudicated bankrupt, his trustee in bankruptcy was substituted as party plaintiff.

Luigi's answer alleged that he could not read or write English or Italian, and that the lease "was obtained from him by fraud" and set up a counterclaim "that the plaintiff obtained the lease . . . by perpetrating fraud upon the defendant and making promises which the plaintiff has not carried into effect" and that the plaintiff owes the defendant $1,200 "under the terms of said alleged lease which the plaintiff refuses to pay."   The counterclaim prayed that the "lease be declared fraudulent, null and void" and that "the plaintiff be ordered to pay to the defendant the amount found due under the terms of the said alleged lease."

Two intervening petitions were allowed.   One was by one Torlone, who had been the purchaser at a foreclosure sale conducted by Pilgrim Packing Company, mortgagee under a chattel mortgage of personal property on the premises given by John and for which the lease in question was assigned as additional security.   The other was by Reconstruction Finance Corporation, which was mortgagee under a prior chattel mortgage given by John and for which also John assigned the lease as additional security.   The amended petition of Reconstruction Finance Corporation added as parties defendant nine children, the heirs of Leonarda; alleged that John owes it $6,500 and interest; and prayed that the indebtedness of John be determined, and that the rights of all parties be determined "to prevent unjust enrichment or forfeiture."

The judge made findings and an order for a decree which in their entirety read as follows: "The court finds the lease referred to in paragraph three of the bill of complaint was

obtained by the petitioner fraudulently. The court finds the petitioner [John] owes the respondent [Luigi] $750 for money loaned. The court finds that John Santiano is indebted to the intervening petitioner, Reconstruction Finance Corporation, in the amount of $6,966.91. Pursuant to these findings, an appropriate decree may be entered." The final decree declared that "the lease alleged to have been obtained by John Santiano is void as to all parties, and that John is indebted to Luigi for $750 and to Reconstruction Finance Corporation for $6,966.91; and ordered that the bill "be dismissed as to all other plaintiffs."[1] The only appeal is by the intervener Reconstruction Finance Corporation, which requested the judge to report the material facts found by him. G. L. (Ter. Ed.) c. 214, § 23, as amended. The judge adopted his findings as his report of material facts.

The first question concerns the record before us. On July 11, 1952, Reconstruction Finance Corporation filed a designation of papers, including portions of the transcript of testimony, to be printed in the record on appeal. Rule 2 (B) of the Rules for the Regulation of Practice before the Full Court (1952), 328 Mass. 693. No counter designation was filed by the defendants. At the January sitting of the full court the then counsel for Luigi stated that there had been an oversight in this respect, and his motion to continue the case was allowed. In an appendix to his brief Luigi has now caused to be printed certain portions of the testimony of various witnesses in lieu of a counter designation which would have been subject to the approval of the trial judge. Rules 2 (C), 2 (F) of the Rules for the Regulation of Practice before the Full Court (1952), 328 Mass. 694. This is not within the scope of our order. Nor is it permissible under the rules cited, which authorize the printing of testimony in an appendix to a brief only where the trial judge has ordered designated matter to be omitted or has approved the condensation of testimony. Rule 2 (F). Com-

---

[1] This may have been intended to read "defendants." In any event the bill should not have been dismissed. *Booker* v. *Woburn*, 325 Mass. 334. *Foley* v. *Springfield*, 328 Mass. 59.

pare Rule 5, 328 Mass. 696. The purpose of designations and counter designations is to achieve an abbreviated record which is to be treated as a report of all the evidence and thus not within the rule of such cases as *Greenberg* v. *Flaherty*, 306 Mass. 95, 98. This means a single record containing the testimony of the witnesses in chronological order, and, except for authorized abbreviations, as given at the trial. The rules do not authorize the testimony to be printed piecemeal by designations and to be scattered through the record, or through the record and the briefs. Such a practice would place an undue burden upon all concerned with the consideration of an appeal. At the arguments counsel orally stipulated that the trial judge has approved and that we might consider the testimony contained in the appendix to the brief. We, accordingly, do so, but without intending to establish a precedent. Rule 7, 328 Mass. 697.

The allegations of fraud in the answer and counterclaim were wholly lacking in factual detail, were too vague, and would have been bad on demurrer. *Cosmopolitan Trust Co.* v. *S. L. Agoos Tanning Co.* 245 Mass. 69, 73. *Arena* v. *Erler*, 300 Mass. 144, 146. *Swinton* v. *Whitinsville Savings Bank*, 311 Mass. 677, 678. Proceeding to a hearing without demurring was a waiver of the point. The judge's finding, however, was fully as vague, and places upon us the burden of ascertaining precisely what he meant when he stated that the lease was obtained fraudulently by the plaintiff. The final decree declares that the lease alleged to have been obtained by the plaintiff is void as to all parties. A report of material facts under the statute must contain every fact necessary to support the decree, from the entry of which no fact not expressly found may be implied. *Carilli Construction Co.* v. *John Basile & Co. Inc.* 317 Mass. 726, 727. If the reported facts do not support the decree, it must be reversed unless the evidence reported shows that it was nevertheless right. *Matter of Loeb*, 315 Mass. 191, 195. In this situation it is still our duty to examine the evidence and to decide the case according to our own judgment, giving due weight to the findings of the trial judge which will not be

reversed unless plainly wrong. *Bernhardt* v. *Atlantic Finance Corp.* 311 Mass. 183, 184–185. *Davis* v. *Newbury-port Five Cents Savings Bank,* 311 Mass. 377, 382.

That John actually was in possession of the premises and there conducted a grocery business is an unquestioned fact. As to this, Luigi's position has been that John occupied under an oral tenancy at a monthly rental of $50.

The trial judge made no finding as to the good faith of Reconstruction Finance Corporation. See *Sullivan* v. *Sulli-van,* 321 Mass. 156, 159. He must have regarded that fact as immaterial. On the evidence it has not been disputed, and we find, that Reconstruction Finance Corporation was a bona fide purchaser of the chattel mortgage and a bona fide assignee of the lease.

We now come to the question, with which the trial judge dealt, whether upon the evidence there was fraud in the obtaining of the lease which rendered it void. The defendant Luigi relies upon the principle that fraud inducing a person to believe that an act which he does is something other than it actually is renders that act void. *Murphy* v. *Barnard,* 162 Mass. 72, 77. Restatement: Contracts, § 475. Williston, Contracts (Rev. ed.) § 1488. See *White* v. *Graves,* 107 Mass. 325, 328; *Boston Five Cents Savings Bank* v. *Brooks,* 309 Mass. 52, 57. At the trial his contention, in-consistent with the allegations in his answer and counter-claim, was that the lease was forged, and had not been given by Leonarda and him. We have not had certified to us the original exhibit, and have seen the lease only in the printed record. Here it is signed "John Santiano," "Leonarda Santoiani" (with one *n*), and "Luigi Santoiani" (with one *n*). It purports to have been acknowledged by "John Santiano" and "Luigi Santoianni" (with two *n*'s) before Edward Hurwitz, notary public. Mr. Hurwitz was John's attorney who prepared the lease. He testified that the lease in fact was acknowledged as stated, and that later he recorded it in the registry of deeds.

There was testimony by John that the lease was signed on behalf of his parents at their request by his sister Phil-

omena. This Luigi and she denied. We understand the judge's finding to signify that the lease was not a forgery but was "obtained" by the lessee, and, therefore, was given by the lessors. On the evidence this could only mean that it was signed by Philomena on their behalf, notwithstanding her further testimony that she never signed the family name in any way but Santiano. Compare *Davis* v. *Meenan*, 270 Mass. 313, 315.

The evidence undoubtedly discloses suspicious circumstances. The lessors were not able to write or to read in any language. John procured the lease to be drawn by his lawyer who gave no copy to the lessors. There was conflicting testimony by John as to whether he had read the lease to his parents before it was signed. No other witness gave such testimony, and on this record a finding that it was so read should not, in our opinion, be made. The lease is unusual and very favorable to John. Not only is the term very long, but it could be found that earlier Leonarda had twice refused to give John a fifty year lease. The lessors are responsible for all repairs, both inside and outside, but the lessee is authorized to make them and to deduct the cost from the rent, which is to continue throughout the fifty year term at $50 a month.

Merely suspicious circumstances, however, are not enough. It is elementary that fraud is never presumed, but must be affirmatively alleged and proved by the party who relies upon it for the purpose of either attack or defence. *Barron* v. *International Trust Co.* 184 Mass. 440, 443. *Kerrigan* v. *Fortunato*, 304 Mass. 617, 620. *Toy* v. *Green*, 319 Mass. 354, 360. Luigi's answer, while suggesting illiteracy, does not allege in what way the lease was "obtained" by fraud. His counterclaim slightly more explicitly alleges that the fraud consisted of "making promises which the plaintiff has not carried into effect." It is true that John has not made certain monthly rent payments, but there is nothing upon which to base a finding (which would have to go beyond the allegation) that the promise to pay rent was made with the intention not to keep it. See *McComb* v. *C. R.*

*Brewer Lumber Co.* 184 Mass. 276, 278; *Fanger* v. *Leeder,* 327 Mass. 501, 505–506. There are no specific alleged false representations upon which Luigi purports to rely. No fiduciary relationship has been alleged or argued. See *Warsofsky* v. *Sherman,* 326 Mass. 290. The finding that the lease was obtained fraudulently is plainly wrong and cannot stand.

The general rule is that, in the absence of fraud, one who signs a written agreement is bound by its terms whether he reads and understands it or not or whether he can read or not. *Grace* v. *Adams,* 100 Mass. 505, 507. *Freedley* v. *French,* 154 Mass. 339, 342. *Atlas Shoe Co.* v. *Bloom,* 209 Mass. 563, 567. *Mackintosh* v. *Cioppa,* 245 Mass. 152, 154. *Wilkisius* v. *Sheehan,* 258 Mass. 240, 243. *Reliable Finance Corp.* v. *Baldrate,* 291 Mass. 150, 152. *Master Bakers Supply, Inc.* v. *Hopkins, Inc.* 300 Mass. 553, 556–557. *Shaw* v. *Victoria Coach Line, Inc.* 314 Mass. 262, 266. This seems to us to be the pertinent rule on the evidence. We refrain, however, from making a binding determination, because we think that in view of the unsatisfactory state of the pleadings and of the record, the ends of justice will be best served by a new hearing.

We do not reach other questions argued by Reconstruction Finance Corporation, such as estoppel, laches, and the effect of G. L. (Ter. Ed.) c. 183, § 5. We need not decide whether it has acquired any rights by subrogation. See *Home Owners' Loan Corp.* v. *Baker,* 299 Mass. 158.

*Decree reversed.*