LILLIAN A. KING *vs.* MOTOR MART GARAGE COMPANY.

Hampden.   September 25, 1957. — December 4, 1957.

Present: WILKINS, C.J., SPALDING, WILLIAMS, COUNIHAN, & CUTTER, JJ.

*Bailment. Agency,* Scope of authority or employment. *Negligence,* Garage, Bailee. *Release. Fraud.*

A conclusion that the proprietor of a public garage became a bailee for hire not only of an automobile stored there for a night for consideration but also of personal property in the automobile was warranted where it appeared that the bailor "discussed" the personal property with the attendant on the floor where the automobile was left and was assured that "everything was . . . safe," although the attendant was not informed as to the nature and value of the personal property, and that a paper signed by the bailor reciting that the garage proprietor had

"not accepted for storage any personal property contained in" the automobile and that any such property was at the bailor's "sole risk" was obtained from the bailor by fraud. [425]

Findings that a large public garage of eight floors connected by ramps had nine methods of ingress and egress, and that after midnight the lighting was reduced by one half and the only floor attendant was stationed on the first floor warranted a conclusion of negligence on the part of the garage proprietor toward a bailor for hire of personal property which was left in an automobile when it was stored on the second floor of the garage and the keys taken away by the bailor one afternoon and which was found to be missing the next day. [425-426]

A paper signed by the owner of an automobile stored for the night in a public garage, reciting that the garage proprietor had not "accepted for storage any personal property contained in" the automobile, that such property was at the owner's "sole risk," and that he would hold the garage proprietor harmless from liability for loss or theft of such property, might properly be found to have been obtained from the owner by fraud where it appeared that while he was backing the automobile into a stall in the garage an attendant requested his signature on the paper, saying that the garage proprietor had "to have a record of all locked cars," and that the owner signed the paper without reading it in reliance on that statement. [426]

TORT. Writ in the Superior Court dated January 21, 1953.

There was a finding for the plaintiff by *Macaulay*, J., after hearing on the report of an auditor whose findings were not to be final. The defendant alleged exceptions.

*Earle C. Parks*, for the defendant.

*John F. Sullivan*, for the plaintiff.

WILLIAMS, J. This is an action of tort to recover from the operator of a public garage damages for injury to an automobile stored with it for hire and for the loss of personal property stolen from the automobile. It was agreed at a pre-trial hearing that the defendant operated a public garage in Boston at which the plaintiff stored her automobile for a consideration on November 9, 1952. The case was referred to an auditor whose findings were substantially as follows. The plaintiff, who was a director and producer of a travelling theatrical company, left her automobile, a two door sedan, in the garage at 4:15 P.M. It contained luggage, a strong box with cash, stock certificates and bonds, a typewriter, jewelry, furs and wearing apparel, the total fair market value of which was $4,865. She "mentioned the per-

sonal property articles at the first floor station upon entry
and discussed this with the second floor attendant where
the car was parked. . . . [She] was assured that every-
thing was as safe as in church. The car was in the act of
being backed into a car space and the attendant asked her
to sign a form which she did not read, giving as a reason,
'We have to have a record of all locked cars.' In reliance
thereon, the plaintiff signed the papers on the driver's win-
dow ledge side with her right hand. This was done as she
was proceeding to back the car into the stall provided."
The paper which she signed read as follows: "I understand
that Motor Mart Garage Company has not accepted for
storage any personal property contained in the motor ve-
hicle below described and acknowledge that all personal
property left at any time in such vehicle is at my sole risk.
I agree to hold harmless Motor Mart Garage Company from
any and all liability or expense of any kind incurred, suf-
fered, or claimed by reason of the loss, theft, conversion, or
damage of any or all such personal property from any cause
during the period that such vehicle is stored by me with
Motor Mart Garage Company. Witness my hand and seal:
C. King   Date 11/9/52   Motor Vehicle Pont.   Registra-
tion No. 46563   Tag No. BA179." The plaintiff took the
keys of the automobile with her to her hotel. Upon arriv-
ing at the garage the following day she found the right vent
of her automobile broken and the above described property
missing.

The garage was a building of eight floors connected by
ramps, with a capacity of 1,000 to 1,200 cars. There were
nine methods of ingress and egress and four emergency
exits which could be opened only from the inside. After
midnight the night lights were about one half of the normal
lighting and of the nine employees on duty there was only
one floor attendant and he was stationed on the first floor.

The auditor found that the plaintiff's loss was caused by
the negligence of the defendant's employees, that she was
induced to sign the form of release in reliance on a mis-
representation as to its purport by the defendant's em-

ployee, and that her signature thereon was obtained by fraud. The judge found that the defendant "had knowledge from the plaintiff" that goods and articles of personal property of value were contained in the automobile when it was received for storage; and denied rulings requested by the defendant that a finding for the plaintiff was not warranted, that judgment should be entered for the defendant, that the defendant was a gratuitous bailee of the contents of the automobile and was chargeable only for gross negligence, and that the plaintiff was bound by the release which she signed. He denied a motion of the defendant for judgment, allowed a similar motion by the plaintiff, and found for the plaintiff in the amount of $4,920. This sum included $20 for repairs to the automobile and $35 for the expense of obtaining duplicates of the stolen securities.

The defendant excepted to the allowance of the plaintiff's motion for judgment, to the denial of its own motion, to the denial of its requests for rulings of law, and to the finding for the plaintiff.

In our opinion the exceptions cannot be sustained. Admittedly the defendant was a bailee for hire of the automobile. A finding was warranted that the defendant's attendant on the second floor acting within the scope of his authority accepted not only the automobile but also its contents for storage. His acceptance of the contents for bailment was not, in the circumstances, dependent on more exact information as to their nature and value. *Stevens* v. *St. Botolph Holding Co.* 316 Mass. 238, 240. *Greenberg* v. *Shoppers' Garage, Inc.* 329 Mass. 31, 34–35. Compare *D. A. Schulte, Inc.* v. *North Terminal Garage Co.* 291 Mass. 251, 256–257. Whether, in the care of the plaintiff's property, the defendant failed to exercise the degree of diligence reasonably to be expected from a prudent person was a question of fact (see *Hayes* v. *Maykel Automobile Co.* 234 Mass. 198; *Hanna* v. *Shaw*, 244 Mass. 57; *Greenberg* v. *Shoppers' Garage, Inc.* 329 Mass. 31, 35–36) originally for the determination of the auditor. His conclusion that the defendant was negligent was supported by his subsidiary

findings and warranted if it did not require the subsequent finding by the judge to the same effect implied by his finding for the plaintiff. *Ballou* v. *Fitzpatrick*, 283 Mass. 336, 338.

As to the release, it is settled that it was voidable if obtained by a fraudulent misrepresentation as to its contents, in circumstances where the party signing it did so without reading it, relying on that misrepresentation. See *McNamara* v. *Boston Elevated Railway*, 197 Mass. 383, 385–386.

In view of the auditor's subsidiary findings there was no error in his conclusion which was impliedly adopted by the judge that the release was obtained by fraud. See *Freedley* v. *French*, 154 Mass. 339; *Barry* v. *Mutual Life Ins. Co.* 211 Mass. 306; *Rocci* v. *Massachusetts Accident Co.* 222 Mass. 336; *Boston Five Cents Savings Bank* v. *Brooks*, 309 Mass. 52.

*Exceptions overruled.*