Margaret F. SCHELL, Administratrix, Plaintiff, Appellant,

v.

FORD MOTOR COMPANY, Defendant, Appellee.

No. 5493.

United States Court of Appeals First Circuit.

Sept. 1, 1959.

Dwight L. Allison, Boston, Mass., with whom Benjamin F. Forde, Jr., Boston, Mass., was on brief, for appellant.

Samuel P. Sears, Boston, Mass., for appellee.

Before MAGRUDER, Chief Judge, and WOODBURY and HARTIGAN, Circuit Judges.

WOODBURY, Chief Judge.

There is no substantial dispute over the basic facts before us on this appeal.

The plaintiff's intestate was a painter employed by J. I. Hass Company, Inc., which had a contract to paint the interior of the defendant's plant in Somerville, Massachusetts. He, with other painters, on orders of their employer, reported for work at the gate of defendant's plant at about 7:20 on the morning of October 8, 1954. There they were informed by the defendant's uniformed guard that they would have to make out a pass before they would be allowed to enter the premises and they were handed cards perforated down the middle, one side labeled Personal Pass and the other side labeled Waiver,[1] and told to sign both

---

1. "Form 1042 Revised No. FD 24883
 "Waiver
"In consideration of Ford Motor Company granting permission to enter its plant and properties, I hereby waive all claims for damage or loss to my person and property which may be caused by any act, or failure to act, of Ford Motor Company, its officers, agents or employees.

"I assume the risk of all dangerous conditions in and about said plant property and waive any and all specific notice of the existence of such conditions.

"I further release Ford Motor Company from all claims for damage or loss to my person or property which I may receive while exercising this license.

"It is further agreed that this license may be cancelled at any time without notice and that I will abide by all applicable Company rules and regulations.

"I Have Read the Above and Agree to Same:

"Signature: John Schell
Address: 231 Park Dr.
City: Boston State: Mass.
Representing: Hass & Co.
"Date: Oct. 11, (sic) '54"

parts of the same. The card was handed to the plaintiff's intestate folded over with the waiver section underneath.

The plaintiff's intestate took the card to a window sill, filled in the pass section with his name and other indicated data, and signed both sections of the card. He did not read the waiver section. He handed the card to the guard at the gate who tore it in two along the perforations and, retaining the waiver section, handed the pass section to the plaintiff's intestate with instructions to keep it on his person during working hours, to turn it in when he left the premises at the end of his day's work and to pick it up again the next morning when he returned to work. A few days later the plaintiff's intestate was injured by falling off a ladder on which he was working when it was struck by a fork truck operated by a Ford Motor Company employee.

The plaintiff's intestate brought suit to recover for his injuries in the appropriate court of the Commonwealth of Massachusetts from which it was removed by the Ford Motor Company to the court below, there being the requisite diversity of citizenship and amount in controversy for federal jurisdiction under Title 28 U.S.C. § 1332(a) (1).[2]

The defendant answered pleading the waiver in defense, and also other matters not now before us, and moved for summary judgment. Its motion was granted and the plaintiff thereupon took the present appeal.

 There can be no doubt, and the District Court ruled, that under the law of Massachusetts, and of course Massachusetts law applies, in the absence of fraud a person may make a valid contract exempting himself from any liability to another which he may in the future incur as a result of his negligence or that of his agents or employees acting on his behalf. Barrett v. Conragan, 1938, 302 Mass. 33, 18 N.E.2d 369. And "The general rule is that, in the absence of fraud, one who signs a written agreement is bound by its terms whether he reads

and understands it or not or whether he can read or not." Cohen v. Santoianni, 1953, 330 Mass. 187, 193, 112 N.E.2d 267, 271.

The question before us, then, is whether under the law of Massachusetts the facts outlined above present any substantial issue of fraud which, of course, in Massachusetts as elsewhere is an issue of fact. We think that they do, and hence that the court below erred in granting the defendant's motion for summary judgment.

The defendant's guard at its gate did not tell the decedent that he was required to sign an agreement waiving any right of action he might acquire in the future as a result of the negligence of the defendant or its employees. He was told only that he would have to make out a pass before he was allowed to enter the building and handed a card marked on one part Pass and on the other part Waiver and told to sign both parts. The guard's description of the card was only partially true, and may have misled the plaintiff's decedent into believing that all he was signing was a pass. This, under the Massachusetts cases to be considered presently, is enough to warrant a finding of fraud rendering the waiver of liability voidable even though the decedent would have discovered that he was signing a waiver as well as a pass had he taken the trouble to read the documents he signed.

The plaintiff in Barrett v. Conragan, 1938, 302 Mass. 33, 18 N.E.2d 369, 370, to which we have already referred, went to a beauty shop for a treatment, as she had done several times before, and as she entered she was handed a card to sign by an employee of the defendant with the statement, which may well have been partly true: "We want names and addresses of any customers and we keep a record of names and addresses of our customers." The plaintiff signed the card without reading it as she had done on her previous visits to the defendant's establishment. In fact the card was a general release of liability which the defendant

pleaded in defense of a tort action brought by the plaintiff to recover for alleged personal injuries caused by the negligence of the defendant's operative. The court said that the mere fact that the plaintiff signed the card without reading it and that the defendant's employee did not read it to her afforded no basis for the plaintiff's later avoidance of the waiver of liability. But the court said that the "evidence here went beyond that" in that it warranted (1) finding that the defendant's agent made a material statement as to the effect and purpose of signing the card which was false, (2) finding that the false statement was made to induce the plaintiff to sign and (3) finding that the false statement did in fact induce the plaintiff to sign. On this evidence the court said: "It could not rightly have been ruled as matter of law that the plaintiff was negligent in relying on the representation as to the effect of signing the card. * * * The question whether there was fraud in the obtaining of the plaintiff's signature was one of fact."

The facts in King v. Motor Mart Garage, 1957, 336 Mass. 422, 146 N.E.2d 365, 366, are essentially similar. The plaintiff in that case took her car to the defendant's garage for storage and notified the attendant that there was valuable personal property in it. She was assured that her property was entirely safe and as she backed her car into a stall she was handed a card to sign by the attendant who said, and it may well have been partly true: "We have to have a record of all locked cars." She signed the card without reading it, only to discover when she brought suit to recover for the loss of her personal property that she had actually signed a release of liability for the loss of all the personal property left in her car. The case was referred to an auditor who found that the plaintiff's loss was caused by the negligence of the defendant's employees, that the plaintiff was induced to sign the re-

lease by the misrepresentation of the defendant's employee as to its nature, and "that her signature thereon was obtained by fraud." The court overruled exceptions to rulings for the plaintiff based on these findings saying in summary: "As to the release, it is settled that it was voidable if it was obtained by fraudulent misrepresentation as to its contents, in circumstances where the party signing it did so without reading it, relying on that misrepresentation." [3]

■ The facts in the case at bar closely parallel the facts in the two cases discussed above. On their authority we think the District Court erred in granting the defendant's motion for summary judgment. That is to say, under Massachusetts law as expounded in the cases to which we have referred the facts in the case before us present a genuine issue as to a material fact, i. e., whether the decedent's signature to the waiver of liability was procured by the fraudulent misstatement of the defendant's guard as to the nature of the instrument he directed the decedent to sign. The case must therefore be remanded for trial of that issue.

Judgment will be entered vacating the judgment of the District Court and remanding the case to that Court for further proceedings consistent with this opinion.

MAGRUDER, Circuit Judge (Retired) (concurring).

I agree that the appeal must prevail, but I am constrained to reach that conclusion by a process of reasoning apparently different from that on which the majority opinion proceeds.

The distinction between substance and procedure, necessary to be made in applying the doctrine of Erie R. Co. v. Tompkins, 1938, 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188, often presents a difficult problem. In my dissenting memorandum in Metropolitan Coal Co., Inc. v.

---

3. For holdings in similar vein but on dissimilar facts see: Shaw v. Victoria Coach Line, Inc., 1943, 314 Mass. 262,

50 N.E.2d 27; Yorke v. Taylor, 1955, 332 Mass. 368, 124 N.E.2d 912.

Johnson, 1 Cir., 1959, 265 F.2d 173, 182, I said I wanted to keep open until I had to decide it the question whether a federal court, despite Erie R. Co. v. Tompkins, "applying the state-created rules of substantive law, should determine the issue of negligence in accordance with its *historic division of functions as between judge and jury*, without looking over its shoulder to speculate whether a state court, on these same facts, would direct a verdict for the defendant." Though there is some puzzling language in Stoner v. New York Life Insurance Co., 1940, 311 U.S. 464, 61 S.Ct. 336, 85 L.Ed. 284, I do not think the Supreme Court meant to decide that question. The Stoner case is usually cited for the proposition that, where there is no controlling decision in the highest court of a state, a federal court must ordinarily accept propositions of state law as declared in the lower courts of the state. See The Federal Courts and the Federal System, Hart & Wechsler 628 (1953). Perhaps that is all the Stoner case meant to decide. In addition, it may be noted that that case had to do with the application of the doctrine of res judicata, which certainly is a matter of substantive law. At all events, in the earlier case of Herron v. Southern Pacific Co., 1931, 283 U.S. 91, 51 S.Ct. 383, 75 L.Ed. 857, it was held that the distribution of functions between judge and jury was a matter governed by the Seventh Amendment concept of trial by jury, and could not be affected in the federal courts, even in a diversity case, by a state constitutional provision denying the right to take from the jury the issue of contributory negligence. It is clear from Byrd v. Blue Ridge Rural Electric Cooperative, Inc., 1958, 356 U.S. 525, 540 note 15, 78 S.Ct. 893, 2 L.Ed.2d 953, that the Herron case is still good law, despite anything that was said in, or might be implied from, Stoner v. New York Life Insurance Co. The case at bar involves not the direction of a verdict by the court, but rather the giving of a summary judgment which, under Rule 56(c), F.R.Civ.P. 28 U.S.C. is mandatory if "there is no genuine issue as to any material fact and * * * the moving party is entitled to a judgment as a matter of law." But I can see no real difference between the criteria for determining when a summary judgment is required and when a case should be taken from the jury by a directed verdict that casts any light on the extent to which a question of federal law is posed. See Woods v. Interstate Realty Co., 1949, 337 U.S. 535, 69 S.Ct. 1235, 93 L.Ed. 1524. See also Gorham v. Mutual Benefit Health & Accident Ass'n, 4 Cir., 1940, 114 F.2d 97, 99, certiorari denied 1941, 312 U.S. 688, 61 S.Ct. 615, 85 L.Ed. 1125; Diederich v. American News Co., 10 Cir., 1942, 128 F.2d 144; McSweeney v. Prudential Insurance Co. of America, 4 Cir., 1942, 128 F.2d 660, 664, certiorari denied 1942, 317 U.S. 658, 63 S.Ct. 57, 87 L.Ed. 529; Lowry v. Seaboard Airline R. Co., 5 Cir., 1948, 171 F.2d 625, 630. Also, see a Note in 66 Harv.L.Rev. 1523–1525 (1953).

However, it seems to me that the majority opinion in the present case is proceeding upon an implicit assumption, without benefit of argument of counsel, that, whenever a state court would send a case to the jury, a federal court in diversity cases must do likewise.

I think that there is a much clearer way to reach the conclusion that the district judge committed error in granting a summary judgment under Rule 56(c). No doubt, as a matter of the substantive law of Massachusetts, the plaintiff's intestate could make a valid contract exempting the Ford Motor Company from liability for injuries resulting from negligence of its agents or employees. Barrett v. Conragan, 1938, 302 Mass. 33, 34, 18 N.E.2d 369. It is also the settled substantive law of Massachusetts that such a contract is voidable "if obtained by a fraudulent misrepresentation as to its contents, in circumstances where the party signing it did so without reading it, relying on that misrepresentation." King v. Motor Mart Garage Co., 1957, 336 Mass. 422, 426, 146 N.E.2d 365, 367. Thus I take it to be clear that a plaintiff can avoid the effect of a contract pur-

porting to exempt the defendant from liability if the following four elements are established: (1) that the defendant's agent made a material statement as to the nature and effect of signing the waiver, (2) that the statement was false, (3) that it was made for the purpose of inducing the other party to sign the waiver, and (4) that it did in fact so induce the signing of the waiver. The affidavits submitted in the present case indicate that, if it should go to trial, evidence would be introduced on which the trier of fact might find all four of these elements for avoidance of the exemption contract. Certainly it could be found that the guard had made a material and false statement as to the document submitted for signature, in that the statement was misleading because it was only a partial truth, as the guard must have known.

It would also be reasonable to infer from the circumstantial evidence that the false statement was made with the purpose of inducing the intestate to sign the document and that the intestate did sign it in reliance upon the false representation. These two matters concern the state of mind of the guard and the state of mind of the intestate; and a person's state of mind must almost necessarily be proved by circumstantial evidence. Moreover, the plaintiff's counsel states in his affidavit "that in signing it he [the intestate] relied on the guard's statement that it was a pass." By the terms of Mass.G.L. (Ter.Ed.1932) c. 233, § 65, as amended, this "declaration of a deceased person shall not be inadmissible in evidence as hearsay * * * if the court finds that it was made in good faith and upon the personal knowledge of the declarant." Therefore the attorney may testify as to what the intestate had told him as to the latter's state of mind when signing the waiver. See American Railway Express Co. v. Rowe, 1 Cir., 1926, 14 F.2d 269, certiorari denied 1927, 273 U.S. 743, 47 S.Ct. 336, 71 L.Ed. 869. Of course, the court must make the required findings as stated in the Massachusetts statute. The district court did not on this motion for summary judgment purport to rule adversely on the admissibility of the attorney's proposed testimony; there was not before it any evidence which would enable it to decide that question. Since there were genuine issues of fact to be resolved by the jury, it was error in the trial court to give a summary judgment under Rule 56(c).