JOSEPH RUDY *vs.* QUINCY MARKET COLD STORAGE AND WAREHOUSE.COMPANY.

Suffolk. March 5, 1924. — June 12, 1924.

Present: RUGG, C.J., BRALEY, DECOURCY, CROSBY, & CARROLL, JJ.

*Warehouseman. Negligence,* Of warehouseman. *Evidence,* Presumptions and burden of proof. *Statute,* Codification, Construction.

At the trial of an action against a warehouseman to recover damages resulting from refusal or failure by the defendant to return certain merchandise stored with him for hire by the plaintiff, the burden is upon the defendant, by reason of the provisions of G. L. c. 105, § 15, to prove that the merchandise was lost or taken from him without his fault, or that he used reasonable diligence in caring for the goods, or that there existed a lawful excuse for refusing or failing to deliver the goods.

In interpreting a codification of a certain branch of commercial law framed for general adoption in the same form in the several States of the union, like the warehouse receipts act, G. L. c. 105, §§ 7–65, this court is governed by the principle that the act " ought to be interpreted in such a way as to give effect to the beneficent design of the Legislature in passing an act for the promotion of harmony upon an important branch of the law."

CONTRACT OR TORT for loss of goods stored with the defendant. Writ dated March 5, 1919.

In the Superior Court, the action was tried before *Raymond,* J. Material evidence, requests for rulings, and instructions to the jury are described in the opinion. There was a verdict for the defendant. The plaintiff alleged exceptions.

*G. Alpert,* for the plaintiff.

*J. T. Hughes,* (*H. L. Barrett* with him,) for the defendant.

RUGG, C.J. This is an action to recover compensation for damages resulting from the alleged refusal or failure of

the defendant to return certain merchandise stored for hire by the plaintiff with the defendant as warehouseman. Controversy as to the delivery of the goods by the plaintiff to the defendant has been settled in favor of the former by an answer of the jury to a special question. The case on the facts as thus settled is that the plaintiff delivered to the defendant three cases containing rolls of cloth, for which the defendant issued a nonnegotiable warehouse receipt under the warehouse receipts act. When later the cases were delivered to the agent of the plaintiff on demand and on compliance with all requirements of the receipt and the warehouse receipts act, several pieces of cloth and a fraction of another were missing.

At the close of the evidence, the plaintiff requested instructions to the effect that the burden of proof was on the defendant to show (1) that the goods were lost or taken from it without its fault, (2) that it used reasonable diligence in caring for the goods, and (3) that there existed a lawful excuse for refusing or failing to deliver the goods. These requests were denied. The jury were instructed that the burden of proof was on the plaintiff to show that the defendant was guilty of negligence in connection with the property and failed to use such care as a reasonably careful man would exercise of his own goods of like character. See G. L. c. 105, § 27.

The instructions given were in accordance with the common law as expounded in *Willett* v. *Rich*, 142 Mass. 356, *Murray* v. *International Steamship Co.* 170 Mass. 166, *Hecht* v. *Boston Wharf Co.* 220 Mass. 397, 403, *Hanna* v. *Shaw*, 244 Mass. 57.

It is contended that the common law rule as to burden of proof has been changed by the warehouse receipts act. That act is to a considerable extent a statement in statutory form of the law governing warehouse receipts and the responsibilities and duties of warehousemen. It is provided in G. L. c. 105, § 15: " A warehouseman, in the absence of a lawful excuse provided by this chapter, is bound to deliver the goods upon a demand . . . [here follow conditions with which there must be compliance]. If the ware-

houseman refuses or fails to deliver the goods in compliance with a demand . . ., the burden shall be upon the warehouseman to establish the existence of a lawful excuse for such refusal or failure." It is provided in § 66 that §§ 7 to 65 inclusive " shall be so interpreted and construed as to accomplish its general purpose to make uniform the law of those states enacting like laws."

The principle by which the court is governed in interpreting a codification of a special branch of commercial law framed for general adoption in the same form in the several States of the Union was stated in *Union Trust Co.* v. *McGinty*, 212 Mass. 205, 206, 207, with respect to the negotiable instruments act. It is equally applicable to the warehouse receipts act. The design of the act was to remove the confusion or uncertainty arising from conflict of statutes or decisions among the several States and to make plain and general the controlling rules of law. Doubtless it does not cover the whole field of this branch of the law, but it is decisive as to all matters comprehended within its terms. " It ought to be interpreted in such a way as to give effect to the beneficent design of the Legislature in passing an act for the promotion of harmony upon an important branch of the law. Simplicity and clearness are ends especially to be sought. The language of the act is to be construed with reference to the object to be attained. Its words are to be given their natural and common meaning, and the prevailing principles of statutory interpretation are to be employed. Care should be taken to adhere as closely as possible to the obvious meaning of the act, without resort to that which had theretofore been the law of this Commonwealth, unless necessary to dissolve obscurity or doubt, especially in instances where there was a difference in the law in the different States."

Applying that principle to the interpretation of the decisive clause of § 15, we are of opinion that the effect of the statute is to shift the burden of proof upon this point to the defendant and thus to change the common law in that particular. That is the natural import of the language used. There was more or less diversity of view among the courts

of the several States as to the burden of proof before the enactment of the warehouse receipts act. Numerous cases showing that are collected in 27 R. C. L. 1002, 1003, § 64 notes.

This court has maintained with care the familiar distinction " between the burden of proof and the necessity of producing evidence to meet that already produced." *Hill* v. *Smith,* 260 U. S. 592, affirming 232 Mass. 188. It is not easy to believe that the General Court intended to introduce into our law a blurring " by careless speech " of that salutary distinction touching a single narrow branch of law. Statutes changing the burden of proof as established by the common law are not unknown. *Duggan* v. *Bay State Street Railway,* 230 Mass. 370, 378, 382. It would be difficult to give a reasonable construction to the statute without attributing to it the force of placing the burden of proof for failure to deliver on the warehouseman.

This conclusion is supported by *Leckie* v. *Clemens,* 135 Md. 264, and *Caldwell* v. *Skinner,* 100 Kans. 567. See, however, *Wilson* v. *Christal,* 187 App. Div. (N. Y.) 660.

*Exceptions sustained.*