Isidore Greenberg *vs.* Shoppers' Garage, Inc.

Suffolk.    April 9, 10, 1952. — May 5, 1952.

Present: Qua, C.J., Lummus, Ronan, Spalding, & Williams, JJ.

*Bailment.    Negligence*, Garage, Bailee.

In an action against the proprietor of a garage as a bailee for hire to recover for the loss by theft at night of valuable property which the defendant could be found to have known was contained in an automobile stored on an upper floor of the garage, a finding that the defendant was negligent was warranted by evidence that the upper floors of the garage were accessible by a stairway at the rear, where

there were windows a short distance above the ground and large enough for a man to crawl through, that only two employees were on duty after midnight and were stationed at the front of the garage where they could not see the rear, and that no employee visited the upper floors or the rear after midnight.

CONTRACT OR TORT. Writ in the Municipal Court of the City of Boston dated June 7, 1950.

The action was heard by *Lewiton,* J.

*Frank P. Hurley,* for the defendant.

*Paul V. Power,* (*Arthur P. Schmidt* with him,) for the plaintiff.

SPALDING, J. This action of contract or tort is brought against the operator of a public garage to recover for the loss of fifty-five fur coats that were removed from the plaintiff's automobile while it was stored with the defendant. There was a finding for the plaintiff on the count in contract. The Appellate Division dismissed the report, and the defendant appealed.

There was evidence of the following: Late in the afternoon of June 28, 1949, a station wagon owned by the plaintiff and operated by his son and agent Herbert Greenberg, hereinafter called Greenberg, was driven to the defendant's garage in Boston for the purpose of storing it there for the night. Upon entering the garage Greenberg told the doorman, Wheeler, that he had valuable merchandise in the automobile and asked "whether it would be safe for parking overnight." Wheeler replied that "it would be safe if the vehicle were locked." Wheeler then handed Greenberg a ticket stub and directed him to park his automobile on the fifth floor which was reached by a ramp. "Wheeler was able to see inside of the station wagon while he was talking to Greenberg and standing by the driver's window, but he denied having looked in." Greenberg took the ticket stub, drove the automobile to the fifth floor, and left it there.

When left in the defendant's garage the automobile, which had been specially equipped for transporting merchandise, contained fifty-five fur coats. The side windows, except those in the front doors, were covered by metal grille work

and cardboard. The vehicle was equipped with an alarm system designed to sound a siren if the vehicle was tampered with when the alarm was set. The alarm was connected with various points inside the vehicle including the doors and side windows, but it was not connected with the windshield. When Greenberg left the automobile with the defendant the alarm was set, and the windows were closed and the doors were locked.

Shortly after eight o'clock on the following morning Greenberg learned that the windshield of the plaintiff's automobile had been smashed and that all of the fur coats were missing. Coat hangers belonging to the plaintiff were found strewn on the rear stairs leading from the fifth floor to the rear door. The defendant's garage has three entrances. Two are in front and one is in the rear. The rear entrance consists of a metal door which opens into a narrow alley. This door is fastened by a padlock on the inside, and cannot be opened from the outside. Different parts of the building can be reached by means of a ramp, an elevator and a staircase. The staircase leads upward from the rear door and also connects with the basement. In the basement, about eighteen inches above the ground, there are several windows large enough for a man to crawl through. There are other windows on the rear wall about ten feet from the ground. These are also large enough for a person to crawl through. Above the basement there are "six or seven floors."

Two employees of the defendant were on duty at the garage on the night in question from midnight to 8 A.M. At no time until shortly after 7:30 A.M. did they or any other employee visit or inspect the upper floors, or the rear stairs or door. Both employees were stationed near the front entrance. From there it was impossible to observe the rear door or the stairway leading therefrom. Nor was it possible to see the basement or the windows located therein. About 8:45 on the morning of June 29 it was discovered that the rear door had been tampered with and the hasp had been wrenched from the inside wall. This

rendered the padlock useless and made it possible to open the door. Whether the basement windows in the rear were opened or closed during the night does not appear. Around 2 A.M. a police officer noticed that one of the windows ten feet above the ground on the rear wall was open "sufficiently to let a person pass through the aperture."

The only questions brought here by the report arise from five requests for rulings made by the defendant. The requests and the judge's action with respect to them are set forth in the margin.[1]

Requests numbered 3, 6, and 9 are closely related and will be considered together. They were rightly denied. In substance requests 3 and 6 asked the judge to rule that the defendant would not be under the duty owed by a bailee for hire as to merchandise stored in the automobile unless it had knowledge of it. It is of course true that the keeper of a garage who receives an automobile for storage as a bailee for hire does not incur the liabilities of such bailee with respect to property contained in the automobile of which he has no knowledge. *Rogers* v. *Murch,* 253 Mass. 467, 471. *D. A. Schulte, Inc.* v. *North Terminal Garage Co.*

---

[1] "3. If you find that the defendant had no knowledge of the quality, kind, or value of the merchandise contained in the plaintiff's automobile, then there was no contract of bailment between the plaintiff and the defendant, and the defendant owed no duty to the plaintiff as bailee. Denied. There was admittedly a contract of bailment between the plaintiff and the defendant as to the automobile which was damaged. Moreover, I find that the defendant had knowledge that valuable merchandise was contained in the automobile when it was received for storage by the defendant."

"6. In the absence of knowledge on the part of a bailee for hire of an automobile of the contents thereof, said bailee is not liable in the absence of gross negligence on the part of said bailee or his agents or servants. Denied as inapplicable. I find that the defendant here had knowledge that the automobile contained valuable merchandise."

"7. The evidence in this case does not warrant a finding that the defendant, its agents or servants, was negligent. Denied."

"9. If a garageman takes into his custody for storage overnight a closed automobile containing valuable merchandise, the garageman is not a bailee for hire as to said merchandise contained within said automobile. Denied, as request for ruling of law. Depends on the facts in the case, whether the garageman knowingly accepts custody of automobile and contents. See *Stevens* v. *St. Botolph Holding Co.* 316 Mass. 238, 239."

"10. The evidence in this case does not warrant a finding that the attention of the defendant, its agents or servants, was called to the storage of furs inside of the closed body of the plaintiff's automobile. Granted. However the attention of the defendant's agent was called to the fact that the automobile in question contained valuable merchandise."

291 Mass. 251, 256. Compare *Stevens* v. *St. Botolph Holding Co.* 316 Mass. 238. In the *Schulte* case it was said: "It is plain the law does not thrust upon one the liabilities of a bailee without his knowledge or consent, and equally obvious that while an acceptance may be implied the law will not infer such until there is something to show notice or knowledge of the alleged bailee that the goods are in fact in his possession" (page 256). In the case at bar the judge found, as he could have on the evidence, that the defendant had knowledge that valuable merchandise was contained in the plaintiff's automobile. In so doing he put out of the case the hypothesis upon which the third and sixth requests were based. This finding also made the ninth request inapplicable.

Request numbered 7 which asked for a ruling that the evidence does not warrant a finding that the defendant was negligent was likewise rightly denied. Although the defendant was a bailee for hire, it was not an insurer. Respecting property entrusted to its care the defendant was bound to exercise that degree of care which may reasonably be expected from ordinarily prudent persons in similar circumstances. *Hanna* v. *Shaw*, 244 Mass. 57, 59. *Rudy* v. *Quincy Market Cold Storage & Warehouse Co.* 249 Mass. 492, 493. *D. A. Schulte, Inc.* v. *North Terminal Garage Co.* 291 Mass. 251, 256. *Butler* v. *Bowdoin Square Garage, Inc. ante,* 28. Whether such care was exercised here was a question of fact. On the question of the care exercised by the defendant the judge could take into consideration the facts that a garage consisting of six or seven floors was attended by only two employees whose duties kept them in the front of the garage; that from where they were stationed the rear portions of the garage could not be observed; that at no time between midnight and shortly after 7:30 A.M. was the fifth floor where the plaintiff's automobile was stored visited by any employee of the defendant, although the automobile was known to contain valuable merchandise; that there were several windows in the rear of the garage which were accessible from the alleyway; that at 2 A.M.

one of the windows was discovered to be open "sufficiently to let a person pass through the aperture." We think that it could have been found that the defendant failed to take proper precautions to safeguard the property entrusted to it by Greenberg. The present case more nearly resembles *Rogers* v. *Murch,* 253 Mass. 467, than it does *Hanna* v. *Shaw,* 244 Mass. 57, on which the defendant relies.

Inasmuch as its request numbered 10 was granted the defendant has no cause to complain. The effect of this ruling was not impaired by what the judge added by way of comment.

Other questions have been argued by the defendant but we do not consider them for the reason that they are not open on this record. The only questions reported are those arising out of the five requests discussed above.

*Order dismissing report affirmed.*