JEAN BUTLER *vs.* BOWDOIN SQUARE GARAGE, INC.

Suffolk. April 8, 1952. — May 5, 1952.

Present: QUA, C.J., LUMMUS, RONAN, SPALDING, & WILLIAMS, JJ.

*Bailment. Negligence*, Garage, Bailee.

Evidence that an automobile was in good condition when it was left in a garage by its owner during an afternoon, that it was in the garage in a damaged condition the next morning, and that meanwhile an employee of the proprietor of the garage had moved it from where it was left to another part of the garage warranted a finding that the damage occurred in the garage through negligence of the employee and warranted a finding for the owner as plaintiff in an action for the damage against the proprietor as a bailee for hire.

CONTRACT OR TORT. Writ in the Municipal Court of the City of Boston dated March 8, 1951.

The action was heard by *Keniston*, C.J.

*Sumner W. Elton,* for the defendant.

*Frank I. Rose,* for the plaintiff, submitted a brief.

WILLIAMS, J.   This case is here on the defendant's appeal from an order of the Appellate Division dismissing a report of a judge of the Municipal Court of the City of Boston. It appears from the report to be an action of contract or tort to recover compensation for damage to the plaintiff's automobile alleged to have been received while stored in the defendant's garage in Boston.   The judge refused the defendant's request for a ruling that "The evidence, considered most favorably toward the plaintiff, is not sufficient as a matter of law to warrant a finding for the plaintiff," and found for the plaintiff.   The issue raised by the refusal of the request was reported.

There was evidence as follows.   The plaintiff left his automobile sedan in the defendant's garage at about 2 P.M. on February 26, 1951.   He was a regular daily patron of the garage and in accordance with his usual practice drove his automobile into a parking bay on the third floor of the garage facing the wall in such a position that it would have to be backed up in order to move it to a different location. On that morning the plaintiff had driven the automobile about the city and had used both forward and reverse gears. When he left the automobile in the garage it was in good operating condition and undamaged.   About an hour after leaving the automobile he received a telephone call from one Race, the regular attendant on the third floor of the garage, and was told that there was something wrong with the transmission linkage and that the automobile would not drive forward or backward.   Race said that he had spoken to the mechanic who told him that it would cost only $1 or $2 to make repairs.   The plaintiff told Race to have the mechanic fix it.   A little later Race called again and told the plaintiff that the trouble with the automobile was in the transmission and not in the linkage and that the garage did not repair transmissions.   The plaintiff told Race that he would have the Russell Pontiac people fix the automobile and would arrange to have them take it that

afternoon or the following morning. The plaintiff arrived at the garage the next morning about eight o'clock and found his automobile in the service department on the first floor. He found that the gear shift was very loose and moved in a full arc instead of staying in the various speed notches where it was set. The right front bumper, grid work, and fender were "smashed in at an angle of 45 degrees. . . . the grill bars were all pushed in on the right side of the grill and the fender and bumper were jammed down almost to the front right tire." The plaintiff pointed out the damage to the manager of the defendant and told him that the damage had been done while the automobile was in the garage. The manager said that if the damage to the front end had occurred while the automobile was in the garage the garage would repair the damage, but would like to do it in their own workshop. The plaintiff then had the automobile towed away by the Russell Pontiac Company. The president of that company, who qualified as an expert, testified that the trouble with the transmission was broken parts and that these parts "could only be broken by a severe blow or force such as could cause the damage to the front right bumper, grille and fender; that the car had been checked the previous day at their place of business, had been road checked, and that the transmission was in perfect condition, and that there was no other damage to the car." There was further evidence that about fifteen minutes after the plaintiff left the automobile in the garage Race attempted to move the automobile; that it would not move in reverse; that in forward gear it moved a couple of feet and stopped; that he pushed the automobile into the aisle and rolled it down to the service floor, three floors below; and that he then telephoned the plaintiff.

It is not disputed that the defendant was a bailee for hire. As such it would be liable for damage to the bailed property from failure to exercise that degree of care which would reasonably be expected from an ordinarily prudent man in similar circumstances. *Hanna* v. *Shaw,* 244 Mass. 57, 59. *Rudy* v. *Quincy Market Cold Storage & Warehouse Co.* 249

Mass. 492, 493. *D. A. Schulte, Inc.* v. *North Terminal Garage Co.* 291 Mass. 251. It could be found that the automobile was in good condition when placed by its owner in the garage. It could also be found that when seen by the plaintiff on the following morning the automobile was in the damaged condition which the evidence disclosed. An inference was warranted that the damage was caused in the garage by the act of the defendant's servant either in moving the automobile from its position in the bay or in pushing it from the third floor to the service room below. Further it could be inferred that the damage was due to the negligence of the servant. See *Georgalis* v. *Geas*, 265 Mass. 8; *Hayes* v. *Maykel Automobile Co.* 234 Mass. 198; *Rogers* v. *Murch*, 253 Mass. 467; *Doherty* v. *Ernst*, 284 Mass. 341; *Sandler* v. *Commonwealth Station Co.* 307 Mass. 470. The case is distinguishable from *Hanna* v. *Shaw*, 244 Mass. 57, where the evidence failed to show greater likelihood that the damage to the automobile in question was caused by acts attributable to the garage owner rather than by the owner's prior operation of the automobile.

There was no error in refusing to grant the requested ruling.

*Order dismissing report affirmed.*