*Southern Division*

## ROBERT K. GOLKA

*v.*

## MASSACHUSETTS PORT AUTHORITY

Argued: June 30, 1971 - Filed: Nov. 15, 1971

*Present:* Murphy, P.J., Lee, Covett, J.J.
Case tried to *Tamkin, J.,* in the Second District Court of Plymouth No. 45632

**Covett, J.** This is an action of contract to recover the value of the motor vehicle of which it is alleged the defendant was the bailee. The

declaration was in one count, and was as follows:

"The plaintiff says that the defendant is a corporation engaged in the business of operating a public parking lot in the City of Boston, at Logan International Airport and invites the public to store their automobiles therein for hire; that on or about the 8th day of July, 1968, the plaintiff entered said parking lot and delivered to the defendant, its agents, or servants, his automobile for the purpose of storing and safe-keeping of the same for a period of time and for a valuable consideration, said automobile to be returned to the plaintiff in the same condition as it then was, upon demand; that the defendant, while it had the care and custody of said automobile, took such improper care thereof and was so careless and negligent, that it permitted or allowed said automobile to be stolen by a person or persons unknown to the plaintiff and that there was contained in said automobile many valuable items of personal property belonging to the plaintiff which were also lost or stolen. All to the great damage of the plaintiff as in his writ alleged."

The defendant answered with a general denial, a plea of contributory negligence, a plea of the assumption of the risk, and several other answers which were included in the general denial.

*There was evidence that*

On July 8, 1968, the plaintiff drove his 1966 Pontiac automobile into the parking facility of the defendant at Logan International Airport, East Boston, Massachusetts, through one of the entrance gates of the parking lot; which gate was not attended and had an automatic ticket dispenser; and, as the vehicle passed over a treadle, a ticket dispenser was activated and automatically produced a "ticket" or a "claimcheck".

The front of the ticket had spaces where the driver of the vehicle for his own convenience could indicate the zone, level and row where his vehicle was to be parked; the other side of the ticket contained the number of the ticket and the date and the hour and minute when the ticket was ejected from the dispenser together with the words, "Logan International Airport, East Boston, Massachusetts, rates as posted, over, claim check, parking contract — please read. We are not responsible for the car, its accessories, or contents while parked in our lot. Customer cars are driven by our employees only at owner's risk. No employee has any authority to vary or increase our liability. Graphic House Associates, Auburndale, Mass., U.S.A."

The plaintiff removed the ticket from the dispenser which act resulted in a gate automatically rising to admit his vehicle. He then drove his vehicle into the parking lot area, parked and locked the vehicle, removed the

keys, took the keys with him and boarded an airplane for New York City.

There was evidence that the plaintiff looked at the ticket and "probably read it", and "in a general way, knew what it said". The plaintiff put the ticket in his pocket and took it with him when he departed for New York City.

On July 19, 1968, the plaintiff returned to Boston and discovered that his motor vehicle was missing. He reported the theft of his vehicle to an attendant of the garage, to the garage manager and to the State Police at the Logan International Airport. He turned over the ticket which he had received upon entering the parking lot to the attendant and it has not been returned to him.

Sometime thereafter, the plaintiff returned to Logan International Airport, went to the gate where his vehicle had been admitted to the parking lot and by physically jumping on the treadly, by his own weight, namely, 165 lbs., was able to activate the ticket dispenser, removed a ticket from the dispenser thereby raising the gate.

The plaintiff filed five (5) requests for rulings of law which together with court's disposition thereof are, as follows:

1. On all the evidence, there should be a finding for the plaintiff. *Denied.*

2. On the law and the evidence, there should be a finding for the plaintiff. *Denied.*

3. The proprietor of a public parking area

who accepts vehicles to be parked for the payment of a charge is a bailee for hire of the vehicle and is under a duty to return the vehicle in the same condition as when received. *Allowed, but the Court does not so find, see Findings of Fact.*

4. The operator of a public parking area who receives a vehicle for a charge to be parked in such area is liable for failure to deliver such vehicle without proof of negligence. *Allowed, but the Court does not so find, see Findings of Fact.*

5. The measure of damages for the failure to redeliver a motor vehicle parked in a public area is the fair market value of the vehicle on the date when the same was received by the bailee. *Allowed, but the Court does not so find, see Findings of Fact.*

The Court made the following Findings of Fact:

"The Court finds that:

"The plaintiff, on July 8, 1968, drove his 1966 Pontiac G.T.O. into the parking facility of the defendant, Massachusetts Port Authority at Logan International Airport, East Boston, Massachusetts.

"The plaintiff drove his car into the front entrance of the facility, the car went over a treadle, which activated a ticket dispenser; the plaintiff took a ticket, glanced at the ticket, put the ticket in his pocket, a gate opened and the plaintiff drove to the third level of the garage

where the plaintiff parked the car next to the exit, locked the car, checked the car, took the key with him, and took the "Eastern Shuttle" to New York City.

"The plaintiff returned on July 19, and found that his car was missing. The plaintiff reported the loss of the car to the attendant at the main gate and the garage manager. The plaintiff and the garage manager searched for the car unsuccessfully and the State Police were notified of the loss.

"The plaintiff made the following observations on July 19, 1968; that two (2) gates to the garage did not have the attendants present; that these two (2) gates were not visible from the manned gates.

"The plaintiff on July 19, 1968, jumped on the road treadle, a ticket came out of the machine and the gate opened and remained open until the next car passed over the treadle. The plaintiff weighed 186 lbs.

"The ticket read:

"Claim Check Parking Contract—Please Read—We are not responsible for the car, its accessories or contents while parked in our lot. Customers cars are driven by our employees only at owners risk. No employee has any authority to vary or increase our liability."

"The plaintiff used the same parking facility two (2) or three (3) times within the year; that he always used the same front entrance and the same ticket dispenser.

"The plaintiff on July 8, 1968 knew the provisions of the ticket.

"The plaintiff incurred a loss of Twenty-eight Hundred Dollars ($2800.00), the value of the car, and a substantial loss of electronic equipment and personalty within the car.

"The element of control by the defendant is lacking, not only did the car owner park the car, lock the car and retain the keys to the car, but the ticket which the plaintiff took from the dispenser and the provisions of which the plaintiff knew about, that is: "We are not responsible for the car, its accessories or contents while parked in our lot." Permitting a car owner to bring his car onto one's premises under these conditions imposes no duty to guard and protect the property.

"One who merely lets a parking privilege, without acquiring control over the car parked, is not a bailee of the car, and thus is under no duty to guard against loss by theft; the Court finds that the defendant, to be a bailee, should have an independent and exclusive possession of the automobile with some degree of control over it. The Court finds no agreement of bailment between the plaintiff and defendant. At most, the relationship of the plaintiff and defendant was that of licensor and licensee.

"The relationship raises no duty except to refrain from wanton, wilful or reckless aggression.

"The Court finds for the defendant."

The plaintiff claims to be aggrieved by the Court's findings that there was no agreement of bailment between the plaintiff and the defendant, and the finding of the court that the relationship of the plaintiff and the defendant was that of licensor and licensee, and the finding of the court that the relationship between the parties raised no duty except to refrain from wanton, wilful or reckless aggression, and the finding by the court for the defendant, and the denial of his requests for rulings numbered 1 and 2 and the Findings of Fact by the court on the allowance of requests numbered 3, 4, and 5.

The plaintiff in his brief and argument has waived his claim as to the loss of personal property in the automobile. He agrees that the loss sustained by him was twenty-eight hundred dollars, the value of the car, as found by the court.

Two questions are raised in this case: one, was the defendant a bailee for hire; and two, was the disclaimer of liability on the ticket a valid defense against the plaintiff's claim?

In order to fix liability upon the defendant as a bailee for hire, it is necessary to ascertain if there is such a delivery of or assumption of control of the automobile entrusted by him. One who merely leases automobile parking privileges is not a bailee of the parked car and, consequently, is under no duty to guard against loss by theft or fire. But where

possession and control of a car or aeroplane have been delivered to a repairman, garage keeper or attendant of a parking lot or airport, there is a bailment for hire with consequent liability for negligent loss or damage. *Williston On Contracts,* vol. 4, § 1065A (rev. ed. 1936); *Ravisini* v. *Auditorium, Inc.,* 42 Mass. App. Dec. 89, 92, 93; *Gibson* v. *Hotel Corp. of America,* 36 Mass. App. Dec. 70, 72.

The decided cases recognize these two principal classes of legal relationships in dealing with the storage of automobiles. *Taylor* v. *Philadelphia Parking Authority,* 156 A.2d 525, 526.

The surrender of the keys by the motorist is a factor often considered in determining whether a transfer sufficient to constitute a bailment of the car was made by the parties. 38 Am. Jur. 2d 336.

Our present case is distinguishable from the situation where the garage or parking lot owner does more than let out a space or controls the car by retaining the keys. See *Hanna* v. *Shaw,* 244 Mass. 57; *Doherty* v. *Ernst,* 284 Mass. 341; *Sandler* v. *Commonwealth Station Co.,* 307 Mass. 470; *Butler* v. *Bowdoin Sq. Garage, Inc.,* 329 Mass. 28; and *Cox* v. *N.E. Auto Parking System, Inc.,* 31 Mass. App. Dec. 75.

This case is also distinguishable from the situation where the garage or lot owner receives a car for repairs and the keys are retained by the plaintiff-driver. See: *Stevens* v. *Stewart-Warner Speedometer Corp.,* 223 Mass. 44.

It must be stressed that leaving a car at the premises of one who is to service it and for which service that person must be in at least partial control of that car is quite different from parking in a garage, locking the car and retaining the keys.

The Appellate Divisions of the District Courts have held that a bailment did not exist because the plaintiff retained the keys in the following cases: *Hall* v. *Lyndon,* 6 Mass. App. Dec. 1; *Gibson* v. *Hotel Corp. of America,* 36 Mass. App. Dec. 70; *Ravisini* v. *Auditorium, Inc.,* 42 Mass. App. Dec. 89. In the aforesaid cases, "custody or control", independent and temporarily exclusive possession, "possession and control, actual or constructive" were found to be lacking and the relationship between the parties was found to be that of a licensor and licensee.

The Appellate Divisions of the District Courts have also held that where a plaintiff did not leave the key to his motor vehicle with the defendant repairer, as requested, a contract of bailment did not arise, therefore, the defendant was not liable for the loss of the car. *Schwartz* v. *Miller & Seddon Co. Inc.,* 27 Mass. App. Dec. 176.

The case of *Hale* v. *Mass. Parking Authority,* 1970 Adv. Sh. 1629, decided some months after the instant case, involved a monthly parker in the defendant's garage who was assigned to a specific area and was expected to lock his ve-

hicle after parking and take the keys with him. He was issued a decal to place on the window of his car and a monthly plate which he was required to show upon exiting. The person who drove away with the plaintiff's car did not produce the plate or the ticket issued to each incoming vehicle. The defendant's servants did not notify the police until four hours later when the true owner appeared for his car. The Supreme Judicial Court held that the jury could have found the defendant negligent for this omission, and the court also found that the jury could have found the defendant negligent in its failure to maintain adequate security devices.

In the case at bar, the only item of identification was the ticket issued to the plaintiff upon entering the garage. The plaintiff did not have any type of permanent relationship with the garage of the Massachusetts Parking Authority as did the plaintiff in the *Hale* case.

However, despite the possible importance of these factual differences, the crucial sentences in the *Hale* decision are the following: "The court correctly instructed the jury that the defendant was a bailee for hire and as such was not an insurer for safety of property left in its custody." 1970 Adv. Sh. 1629 at page 1631.

The *Hale* case has been cited by the Appellate Division of the Municipal Court of Boston in two cases, *Richard* v. *Massachusetts Port Authority*, 22 Legalite 329 and *Forbro of New*

*York, Inc.* v. *Hotel Somerset, Inc.*, 22 Legalite 455. Both of these cases involved the parking of a car in a garage, retention of the keys by the driver, and disappearance of the car in question. In both cases, it was held that a bailment relationship was present.

We are not satisfied that the decision in *Hale* changes the law of bailment with respect to the storage of automobiles.

This case bears a marked resemblance to the case of *Ravisini* v. *Auditorium, Inc.*, 42 Mass. App. Dec. 89 which we intend to follow.

We hold that the Massachusetts Parking Authority did not have custody, control or possession of the plaintiff's vehicle, therefore a licensor-licensee relationship existed between the parties.

The only duty the defendant owed was to refrain from wanton, wilful or reckless aggression. *Ravisini* v. *Auditorium, Inc.*, 42 Mass. App. Dec. 89, 93 citing *Carroll* v. *Hemenway*, 315 Mass. 45, 46. There is no evidence of such action by the defendant. The first question must be answered in the negative.

No bailment relationship existed between the plaintiff and defendant, and even if there were, the plaintiff cannot recover because the plaintiff knew the exculpatory provisions of the ticket. A concise statement of the law is found in *Kergald* v. *Armstrong Transfer Express Co.*, 330 Mass. 254, 255, 256; "Where what is given to a plaintiff purports on its face

to set forth the terms of a contract, the plaintiff whether he reads it or not, by accepting it assents to its terms, and is bound by any limitation of liability therein contained in the absence of fraud. On the other hand, where ... what is received is apparently a means of identification of the property bailed, rather than a complete contract, the bailor is not bound by a limitation upon the laibility of the bailee unless it is actually known to the bailor.'' See *Lee* v. *Allied Sports Associates, Inc.,* 349 Mass. 544, 549 and the concurring opinion in *Ravisini* v. *Auditorium, Inc.,* 42 Mass. App. Dec. 89, 94 citing *D.A. Schulte* v. *North Terminal Garage Co.,* 291 Mass. 251.

The plaintiff's knowledge of the disclaimer would also distinguish this case from *Richard* v. *Mass. Port Authority,* Appellate Division of the Municipal Court of Boston 22 LEGALITE 329. The second question must be answered in the affirmative.

We recognize that other jurisdictions have found disclaimers of liability so repugnant that statutory enactments have declared them to be void as against public policy. (§ 5-325 of the New York General Obligations Law (McKinney); see *Makower* v. *Kinney System,* 318 NYS 2d 515, 518; and *Continental Ins. Co.* v. *Meyers Bros. Operations, Inc.,* 288 NYS 2d 756. Criticism is also expressed in 175 A.L.R. 128 Garagemen, § 61.

Similar legislative action in this Common-

wealth may be desirable to eliminate the confusion that now exists.

There being no prejudicial error, an order should be entered **dismissing the report.**