*Municipal Court of the*
*City of Boston*
No. 226756

## ELIAS COHEN

v.

## AUDITORIUM GARAGE, INC.

Argued: Oct. 19, 1973 - Decided: Jan. 18, 1974

*Present:* Canavan, J. (Presiding), DeGugliel-
mo, Doerfer, JJ.

Case tried to *Lewiton, J.*

**Canavan, J.** This is an action in four counts,
the first two of which were waived. In Count
III the plaintiff alleged a contract of bailment
and that the defendant was negligent in per-
mitting someone to remove his vehicle from
defendant's possession, resulting in the loss
of said vehicle; and Count IV alleged a con-
version of the plaintiff's vehicle by the defen-
dant.

The answer of the defendant is a general
denial and special denials that those persons
at Auditorium Garage, Inc. were its agents or
persons for whose conduct the defendant was
responsible; that the plaintiff was contribu-
torially negligent, assumed the risk of loss, a
denial that the plaintiff delivered his vehicle
to the defendant or that the defendant con-
verted the plaintiff's property and an allega-
tion that at no time did the defendant take
possession or control of the plaintiff's vehicle.

At the trial there was evidence tending to
show:

On October 23, 1968, at about 7:46 a.m., the plaintiff drove his motor vehicle to the parking facility operated by the defendant. The entrance area of the defendant's garage was divided into 3 lanes, which were separated by two stalls for the use of attendants. The 1st and 3rd lanes were used as an entrance and exit and the middle lane's use was alternated with the volume of traffic entering or leaving.

On entering, tickets were dispensed by an attendant and the plaintiff took one of the tickets, placed it directly in his pocket and proceeded up the circular two way ramp to park the said vehicle on the 4th floor of the 6-floor parking facility that had a capacity of 200-250 cars.

The plaintiff parked his car, locked it and left it, taking his ticket, unread, and the keys with him. The plaintiff returned to the parking facility at about 5:30 p.m. the same day. He went to where he had parked his car and, not finding it, made a search and then he went to the first level and reported its loss to the attendant. The plaintiff and the attendant made an unsuccessful search for the vehicle. The police were notified of the theft. There were printed forms in the office of the defendant's garage, entitled "Stolen Car Report". These forms were printed by the defendant. The defendant's employee filled in a "Stolen Car Report". The plaintiff's vehicle has never been recovered.

The plaintiff had been parking his vehicle at the defendant's parking facility for a period of many months and was familiar with the system of operation which was as follows:

After receiving a ticket from the dispenser or an employee of the defendant at the entrance, the motorist drives to a space in the building of his own choosing, the vehicle is then to be locked by the motorist who retains the keys and who, after leaving, returns at a time of his own choosing. Motorists after parking their cars, depart from the six floor facility either by elevator or by a stairway to the street level and return is made in a similar fashion. Persons not owning cars parked at the garage are free to enter the defendant's parking facility and remain there, as the garage building is so arranged that any person could enter or leave it through the elevator and go to or from any floor without seeing an attendant on duty.

**There was evidence to show that** there were two attendants on duty, one assigned at all times to the entrance, and another who circulated throughout the facility observing conditions and persons and maintaining the cleanliness of the premises. It was the normal procedure in this facility that a person who had parked his car there would, on leaving (with the car), give his parking ticket to an attendant employed by the defendant; that the time would be stamped on the ticket and the park-

ing fee determined by the attendant; that the patron would then pay the fee so determined and leave the garage with the car. The attendant at the entrance controlled the flow of exit traffic with a traffic arm, raising it to permit vehicles to depart.

A vehicle which failed to turn in a ticket when leaving was stopped and the operator required to submit identification which was recorded along with the registration number of the vehicle. No such identification was required of the driver of a vehicle who had a ticket. The attendant at the exit would be unable to tell if the ticket that any driver presented was the one that was issued to the driver of that vehicle when it entered the garage. The plaintiff had seen such tickets on the dashboards of other unoccupied cars parked in the garage.

On the day in question two cars left the garage without the drivers presenting a parking ticket. There was no evidence as to whether either of these parking tickets was used by some third party to enable him to take the plaintiff's car out of the garage.

At the entrance area, placed at a location substantially parallel to the flow of traffic entering the garage, there was a four feet by eight feet sign on the wall which stated:

"1. Park and lock your own car.
"2. Do not leave your parking ticket in your car.

"3. Not responsible for fire, theft or vandalism.

"4. Not responsible for damage to, or articles left in cars."

There was evidence that if a person driving his car into the garage to park it were to read the foregoing sign on the wall, he would have to divert his eyes from the driveway; that he had to watch where he was driving and not read the sign or read the sign and not watch where he was driving.

The ticket issued to each parker bore the following legends — on one side — "You park and lock your own car therefore we cannot assume responsibility for fire, theft, vandalism or any damage to car or loss of contents, or for any personal injury from any cause". And on the other side — "Lost ticket pays full charge — 50 Dalton Street, Boston." The plaintiff testified he never looked at the tickets he received at this facility.

At the close of the evidence and before final arguments the defendant filed requests for rulings all of which were denied by the trial justice, who thereafter found for the plaintiff.

The two basic questions raised by the defendant in its requests for rulings and to which it confined its argument before this Division are:

(1) Whether or not the relationship between the plaintiff and the defendant was that of bailor and bailee, and if so,

(2) Was the defendant negligent and, therefore, in breach of its contract of bailment.

Where a motor vehicle has been parked in a garage or other enclosed area which is under the control of one who charges a fee, that person is a bailee for hire. *Hanna* v. *Shaw*, 244 Mass. 57. In the case of *Hale* v. *Massachusetts Parking Authority*, 356 Mass. 470, where the plaintiff was a monthly parker in the defendant's garage, made monthly payments to the defendant, was assigned to a specific area and was expected to lock his vehicle after parking it and take his keys with him, the court said "The court correctly instructed the jury that the defendant was a bailee for hire" [See: *Demone* v. *Fitz-Inn Auto Parks, Inc.*, 47 Mass. App. Dec. 1].

In the instant case that transaction between the plaintiff and the defendant was not merely the letting of space where the plaintiff might leave his automobile, as contended by the defendant. Here, because of the type of construction of the garage and the method of its operation by the defendant in controlling the flow of the exit traffic, the trial judge was warranted in finding the defendant had control of the plaintiff's car and was a bailee for hire. It is immaterial whether the car was locked and the keys kept by the car owner.

As a bailee for a consideration, the defendant is not an insurer of the property received,

but would be liable for damage or loss of the bailed property if this resulted from a failure to exercise that degree of care which would reasonably be expected from an ordinary prudent person in similar circumstances. *Stevens v. Stewart-Warner Speedometer Corp.*, 223 Mass. 470. *Hanna v. Shaw*, 244 Mass. 57. *Morse v. Homer's Inc.*, 295 Mass. 606, 609. *Butler v. Bowdoin Sq. Garage, Inc.*, 329 Mass. 28, 30. *Greenberg v. Shoppers' Garage, Inc.*, 329 Mass. 31, 35. *Hale v. Mass. Parking Authority*, 358 Mass. 470. Whether such care was exercised in this case was a question of fact for the determination of the trial justice.

The plaintiff urges that we apply the rule announced in *Knowles v. Gilchrist Co.*, 1972 Mass. Adv. Sh. 1783, that, "Once the bailor provides delivery of the property to the bailee in good condition and the failure to redeliver upon timely demand, the burden of proof is irrevocably fixed upon the bailee to prove by a fair preponderance of the evidence that he has exercised due care to prevent the property's loss or destruction." It is not necessary to consider whether the burden-of-proof rule established by the *Knowles* case may properly be applied to this case since the reported evidence warranted a finding of negligence on the part of the defendant under rules applied in earlier cases.

The trial justice could have found the defendant negligent in using a system referred

to as a single ticket system. Under this system, anyone entering the garage would take a ticket from the dispenser or an employee of the defendant and could use that ticket to drive out of the garage with any other car parked therein by simply surrendering the ticket at the exit. Something more is required to be able to identify the vehicle leaving the garage, such as a split ticket system, under which one-half of the ticket is given to the operator of the motor vehicle upon entering the garage and the other half is retained by the garage keeper, with the registration number of the parked vehicle on each part of the split ticket. This system would more properly ensure that the driver of an automobile leaving the garage was the true bailor of the motor vehicle.

The trial justice could have found the defendant negligent in its failure to maintain adequate security devices in not providing enough personnel to prevent unauthorized persons from being on the premises and from breaking into and removing the plaintiff's car. *Wright* v. *Heil Equipment Co.*, 357 Mass. 74. *Hale* v. *Mass. Parking Authority*, 358 Mass. 470.

The trial justice could also have found the defendant negligent within *Bean* v. *Security Fur Storage Warehouse Co.*, 344 Mass. 674, that the receipt of a bailed chattel by the defendant and its disappearance while in the possession of the defendant, with no explana-

tion for its disappearance, will permit a finding that the defendant was negligent.

The trial justice found as a fact that the plaintiff was not aware of the exculpation clause on the back of the parking ticket, or on the sign at the entrance to the garage, not having read either one. He properly found that being ignorant of the printed matter, the plaintiff was not bound by either of its provisions. *Sandler* v. *Commonwealth Station Co.*, 307 Mass. 470-472. *Kerglad* v. *Armstrong Transfer Express Co.*, 330 Mass. 254-7. [But See: *Ravisini* v. *Auditorium, Inc.*, 42 Mass. App. Dec. 89, where motorist read the ticket].

There was no error in the denial of the rulings requested by the defendant. **Report dismissed.**

Owen J. Meegan
   for the Plaintiff
Richard S. Kelley
   for the Defendant